393 A.2d 921

COMMONWEALTH of Pennsylvania

v.

**Lamont BULLOCK, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Oct. 27, 1978.

Eugene H. Clarke, Jr., Philadelphia, for appellant.

Eric B. Henşon, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction for robbery, attempted rape and two counts of aggravated assault. On appeal appellant argues: (1) The court erred in failing to suppress identification testimony as well as physical evidence linking appellant to the crime; (2) The court erred in refusing to dismiss the case under Rule 1100; and (3) The evidence was insufficient to sustain the convictions on attempted rape and aggravated assault. We disagree and will affirm.

At approximately 5:30 A. M. on August 31, 1976, Joan Kirby alighted from a trolley at Broad Street and Allegheny Avenue in Philadelphia, having completed one leg of her journey to work. Ordinarily Miss Kirby would catch the "C-bus" northbound on Broad Street to work, but this day she was behind schedule and thought she had missed the bus, so she decided to take the subway. She noticed as she

deboarded the trolley that two black males got on, while a third black male, subsequently identified as appellant, did not go with them. A few moments later as Miss Kirby waited for the train on the subway platform, appellant came down the steps and stood on the illuminated platform some distance from Miss Kirby. Soon he approached her and asked her for a match, which she gave him. As he lit a cigarette the lighted match further illuminated his face. He then departed up the steps. Seconds later he ran down the steps and shouted that there was a "C-bus" coming. When Miss Kirby asked if the bus were traveling northbound, and appellant responded affirmatively, Miss Kirby began to run up the steps to Broad Street. She only reached the first landing when appellant grabbed her from behind, covered her mouth and told her to keep quiet or he would kill her with a knife he was carrying.[1] He took her purse and emptied the contents onto the steps. Dissatisfied with the small amount of change he found, he asked for more money and punched Miss Kirby in the face. Indeed, every time Miss Kirby uttered a sound appellant punched her in the face. Eventually Miss Kirby gave appellant nine dollars from her pants' pocket, but appellant still was not satisfied. Appellant then tore Miss Kirby's shirt and pulled down her bra exposing her breasts. As he began to unbuckle her pants, she broke free and he began to choke her. Once again she broke free only to be caught again by appellant. By then however, bleeding profusely, she had managed to reach Broad Street, although appellant still had her by the neck. Fortunately, a police officer patrolling the area heard her screams and saw her in appellant's clutches. At the same moment appellant saw the patrol car and took flight. While radioing for help the patrolman pursued appellant to a nearby alley, and the block was surrounded by police responding to the call. The alley was searched and appellant was found hiding in a yard. A violent struggle ensued

1. Actually Miss Kirby never saw a knife, and appellant was not carrying one when he was arrested.

during which one police officer received a broken wrist when appellant, attempting to escape, pushed him off a wall.

In the meantime Miss Kirby had been taken to Temple Hospital, and had been in the emergency room for ten minutes when the police arrived with appellant, whom she immediately identified as her assailant. Furthermore, appellant fit the description she had earlier given the police, including the clothing he was wearing. A search of appellant revealed nine dollars in cash precisely in the denominations Miss Kirby had been carrying.

Appellant first contends that the one-on-one confrontation with Miss Kirby at the hospital was illegal, and that Miss Kirby's identifying him there as well as at trial should have been suppressed. We are not persuaded by appellant's argument, however. As appellant maintains, it is certainly true that identification evidence is inadmissible if it is obtained as the result of a procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Jenkins,* 232 Pa.Super. 523, 335 A.2d 463 (1975). On the other hand the courts also recognize that confrontations between victim and suspect shortly after the occurrence of a crime may be desirable from the standpoint of the suspect as well as from that of law enforcement authorities. *Commonwealth v. Jenkins,* supra; *United States v. Davis,* 399 F.2d 948 (2d Cir. 1968), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1968); *Russell v. United States,* 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969), *cert. denied,* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). Hence, while one-on-one confrontations are generally condemned, those which occur soon after the commission of a crime are permissible if, indeed, not favored. In the instant case, the confrontation between appellant and Miss Kirby occurred less than one-half hour after the robbery and attempted rape, and only minutes after her arrival at the

hospital. Hence, the identification testimony was admissible.[2]

Appellant's second contention, that he was denied his right to a speedy trial pursuant to Pa.R.Crim.P. Rule 1100 has been waived. Appellant's petition to dismiss the charges as required by Rule 1100(f) was not filed until after appellant was tried and convicted. Rule 1100(f) expressly requires the filing of a written motion "before trial" in order to raise a Rule 1100 claim, and we have held that failure to comply with this requirement is a waiver of the claim. *Commonwealth v. Matt,* 248 Pa.Super. 538, 375 A.2d 371 (1977); *Commonwealth v. Downie,* 247 Pa.Super. 19, 371 A.2d 1016 (1977). Hence, we may not consider appellant's Rule 1100 claim on appeal.

Appellant's final contention, that the evidence was insufficient to sustain the charges of attempted rape and two counts of aggravated assault is not meritorious. With regard to attempted rape, appellant contends that ripping Miss Kirby's shirt, pulling down her bra, and attempting to remove her pants was not so substantial a step toward rape to fulfill the requirement of an attempt. Crimes Code, 18 Pa.C.S. § 901(a) (1973). It should be noted that appellant had already committed the sexual offense of indecent assault under the Crimes Code, 18 Pa.C.S. § 3126(1) when he tore open Miss Kirby's shirt and ripped down her bra. Especially given the awesome violence of appellant's attack on Miss Kirby, and because he went further and attempted to remove Miss Kirby's pants, it was reasonable for the fact-finder to conclude that appellant had taken a substan-

2. In any event, it should be noted that the hearing court's findings of fact establish that Miss Kirby's opportunity to observe appellant was such that her in-court identification had a basis independent of the hospital confrontation. Appellant's attack on Miss Kirby lasted nearly ten minutes, and much of the time she and appellant were face to face, especially when he was choking her. See *United States v. Wade,* supra; *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977). Thus, any error in admitting the out of court identification was harmless beyond a reasonable doubt given the overwhelming evidence of appellant's guilt. *Commonwealth v. Futch,* 447 Pa. 389, 397 n. 8, 290 A.2d 417 (1972).

tial step toward rape. Cf. *Commonwealth v. White,* 232 Pa.Super. 176, 181, 335 A.2d 436 (1975). Indeed, it would appear that the only other reasonable inference which could arise from appellant's conduct was that he intended to commit involuntary deviate sexual intercourse, also a felony of the first degree. Crimes Code, 18 Pa.C.S. § 3123. Since orthodox intercourse is the more common act, rape was the more natural inference.

▮▮ Concerning the aggravated assaults on Miss Kirby and on one of the arresting police officers, appellant's argument is frivolous. By all accounts, when Miss Kirby was rescued she was bleeding profusely from the face and had suffered a fractured cheekbone. As a result of the assault Miss Kirby received several months of medical attention and was contemplating plastic surgery at the time of trial. Coupled with appellant's attempts to strangle her and his threat to kill her, this assault was clearly aggravated within the meaning of the Crimes Code, 18 Pa.C.S. §§ 2702 and 2301. Compare *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978). With regard to the police officer whose wrist was broken when appellant pushed him from a four feet high retaining wall during the making of a lawful arrest, appellant's conduct clearly fell within the proscriptions of aggravated assault as set forth in the Crimes Code, 18 Pa.C.S. § 2702(a)(2) & (3). Since appellant certainly caused bodily injury to the officer, there is no question that appellant committed a misdemeanor of the first degree under Section 2702(a)(3) for which he properly received a sentence of five years probation. Crimes Code, 18 Pa.C.S. § 1104.

For the foregoing reasons, the judgments of sentence are affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.