429 A.2d 1113

COMMONWEALTH of Pennsylvania,

v.

Rodney ALLEN, Appellant.

COMMONWEALTH of Pennsylvania,

v.

Allen ADAMS, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed May 8, 1981.

Daniel A. Rendine, Philadelphia, for appellant in No. 2225.

Franklin L. Noel, Assistant District Attorney, Philadelphia, for Commonwealth, appellee in No. 2225.

James F. McBride, Philadelphia, for appellant in No. 2435.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee in No. 2435.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

CAVANAUGH, Judge:

This case involves two appeals. Rodney Allen, appellant in No. 2225, and Allen Adams, appellant in No. 2435, were co-defendants in a non-jury trial. Both were found guilty of possession of an instrument of crime, conspiracy to commit robbery, and two counts of robbery. Their post-verdict motions were denied and sentence was imposed. The court sentenced Allen to five to ten years' imprisonment on one robbery count, ten years' probation on the conspiracy count (to run concurrent with the robbery sentence); and suspended sentence on the other counts. The court sentenced Adams to five to ten years' imprisonment on each robbery count (to run concurrently), ten years' probation on the conspiracy count (to run concurrent with the robbery sentence), and suspended sentence on the count of possession of an instrument of crime. This appeal followed. We affirm.

Both defendants argue that there was insufficient evidence to sustain the verdicts and that the verdicts were against the weight of the evidence.

* President Judge Joseph F. O'Kicki, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

In testing the sufficiency of evidence, we proceed in several steps. First, we accept as true all the evidence upon which the finder of fact could properly have reached its verdict. Next, we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.

*Commonwealth v. Madison,* 263 Pa.Super. 206, 210, 397 A.2d 818, 820 (1979) (citations omitted). Our review of the evidence in this manner discloses the following. Carl Izzard and James Gray, the victims, and others were playing dice and gambling. The defendants, Allen and Adams, and their companion, Gregory White, came to the place where Izzard and Gray and others were playing, but they did not play dice or gamble. The victims, the defendants, and White later decided to shoot pool for money. They all got in a car to go to the pool hall. On the way they stopped so that Adams could get a pool cue. When Adams returned to the car, he was carrying a small sack rather than a pool cue. They continued driving to the pool hall, and on the way Adams produced a gun and demanded Izzard and Gray to give him their money. After Adams hit Izzard on the head with the gun, Izzard gave him his money. Gray also gave him money and gave his watch to White, who later returned the watch.

Allen, who was driving, took the gun from Adams and hit Izzard with it. Adams punched and kicked Izzard and then the victims were allowed to leave the car.

The foregoing evidence was sufficient to sustain the verdicts. The defendants' argument that the evidence was insufficient relies on their testimony and the testimony of White, who was a co-defendant.[1] This testimony showed that the defendants had participated in the dice game, had been cheated by the victims, and were reclaiming their lost money from the victims. The factfinder, however, may

1. White's motion for a directed verdict was granted and he was discharged.

believe some, all, or none of the testimony, *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976). Here the factfinder chose to believe the prosecution's testimony and disbelieve the defense testimony. Since we must view the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Madison, supra,* the argument that the evidence was insufficient has no merit.

Defendants also argue that the verdict is against the weight of the evidence since the defense testimony is more credible than the prosecution testimony. The question of credibility is for the factfinder. *Commonwealth v. Myrick, supra.* Our review of the record discloses no reason to disturb the verdict of the factfinder.

Defendants contend that their Sixth Amendment right to confront their accuser was violated since the Commonwealth did not call one of the victims, Gray, as a witness. The Sixth Amendment right to confrontation extends only to witnesses whose testimony is presented. *Commonwealth v. Paskings,* 447 Pa. 350, 290 A.2d 82 (1972). Moreover, the Commonwealth is not obligated to call the victim of a crime as a witness. *In Interest of Gonzales,* 266 Pa.Super. 468, 405 A.2d 529 (1979); *Commonwealth v. Jones,* 452 Pa. 569, 308 A.2d 598, 607 (1973); *see Commonwealth v. Gasiorowski,* 225 Pa.Super. 390, 310 A.2d 343 (1973).

Defendants also assert that the Commonwealth's failure to inform them that it would not call Gray as a witness and its failure to inform them of Gray's whereabouts requires a new trial. We disagree. There is no requirement that the Commonwealth inform the defense that it does not intend to call the victim as a witness. However, if the Commonwealth does not call an eyewitness to the stand, "it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided." *Commonwealth v. Gray,* 441 Pa. 91, 100, 271 A.2d 486, 490 (1970), *cert. denied,* 402 U.S. 967, 91 S.Ct. 1683, 29 L.Ed.2d 132 (1971); *see Commonwealth v. Johnson,* 236 Pa.Super. 98, 344 A.2d 646

(1975) *allocatur denied* (1976). If the defense is able or should have been able to procure an eyewitness without the Commonwealth's aid, the Commonwealth need not inform the defense of the witness's whereabouts. Thus, the purpose of the requirement that the Commonwealth apprise the defense of the eyewitness's name and whereabouts, is to allow the defense to secure the witness at trial. Here the record does not disclose that the Commonwealth informed the defense of Gray's whereabouts.[2] However, the record also shows that: the defendants never requested the Commonwealth to inform them of Gray's whereabouts; when the defendants learned that Gray would not be called as a witness, they never requested a continuance to secure Gray at trial; and they never stated that they wished to call Gray as a witness. The only request which the defendants made was a motion for a demurrer at the close of the Commonwealth's case because of the Commonwealth's failure to call Gray. N.T. April 26, 1978, 145–49.

■ From these circumstances it appears that the defendants did not wish to secure Gray at trial, but rather hoped that the Commonwealth had erred by not calling him as its witness. Since the purpose of requiring the Commonwealth to inform the defense of Gray's whereabouts was to allow the defendants to secure Gray at trial and the record does not show that the defendants wished to secure Gray at trial, the lower court did not err by denying the motion for a demurrer. *Cf. Commonwealth v. Paskings, supra; Commonwealth v. Culbreath*, 270 Pa.Super. 458, 411 A.2d 809 (1979); *Commonwealth v. Wortham*, 235 Pa.Super. 25, 342 A.2d 759 (1975) *rev'd on other grounds*, 471 Pa. 243, 369 A.2d 1287 (1977).

■ Defendant Adams also asserts that the factfinder was required to draw an unfavorable inference from the Com-

2. Both the lower court's opinion, page 9 and the Commonwealth's brief in Adams' appeal, page 3, states that the Commonwealth provided the defendant with "identifying information" concerning Gray. The record does not disclose the type of information which may have been provided.

monwealth's failure to call Gray. Such an inference, however, is not mandatory, it is merely permissible, *see Commonwealth v. Jones*, 452 Pa. 569, 581, 308 A.2d 598 (1973). Thus the lower court did not err by declining to draw such an inference.

Defendant Allen contends that the lower court improperly considered his juvenile record in sentencing. He argues that a judge cannot use juvenile adjudications as a basis for increasing sentence since juvenile adjudications are not accompanied by the same due process safeguards as are criminal convictions. We disagree.

The imposition of a proper sentence is a matter vested in the sound discretion of the trial court. *Commonwealth v. Edrington*, 490 Pa. 251, 416 A.2d 455 (1980). In exercising this discretion the trial judge must rely on full and accurate information and must state on the record the reasons for the sentence imposed. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977); *see Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977). The statement of reasons must show that in imposing sentence the judge attached weight to the statutory guidelines for sentencing and considered the facts concerning the circumstances of the offense and the individual background of the defendant. *Commonwealth v. Edrington, supra; Commonwealth v. Kostka, supra; Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). Moreover, the sentence imposed must be the minimum punishment consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *Commonwealth v. Edrington, supra* ; 18 Pa.C.S.A. § 1321(b).

To help the judge individualize the sentence according to the circumstances of the case the court may and, in some instances, must order a presentence investigation report. Pa.R.Crim.P. 1403. Such reports may indicate whether the defendant has previously been adjudicated delinquent. Indeed although the use of juvenile adjudications is generally prohibited, the legislature has expressly authorized their

use, inter alia, "in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report." 42 Pa.C.S.A. § 6354(b).

■ Moreover, the legislature has expressly provided that if a defendant has no history of prior delinquency or criminal activity such circumstance shall be accorded weight in favor of an order of probation. 18 Pa.C.S.A. § 1322(7); *see Commonwealth v. Farrar*, 271 Pa.Super. 434, 413 A.2d 1094 (1977).

Finally we note that our Supreme Court has held that prior juvenile adjudications of delinquency may be considered in imposing sentence since such information is helpful to the sentencing court in imposing sentences which are fair to society and the defendant. *Commonwealth ex rel. Hendrickson v. Myers*, 393 Pa. 224, 144 A.2d 367 (1958); *see Commonwealth v. Riviera*, 254 Pa.Super. 196, 385 A.2d 976 (1978).

■ Instantly the record shows that the trial judge stated his reasons for imposing sentence, attached weight to the statutory guidelines for sentencing, and considered the circumstances of the offense and the background of the defendant. In particular the judge considered the defendant's prior delinquency adjudications as an indication that in the past milder punishment had not worked. Thus, the judge concluded that total confinement was appropriate. Under these circumstances we hold that the sentencing court properly considered the information concerning defendant's prior adjudications of delinquency.

■ Defendant Allen also argues that the lower court improperly considered the delinquency adjudications as criminal convictions since the judge stated that the defendant had a "significant criminal background as a juvenile and as an adult".[3] This argument fails to consider the court's remarks as a whole. Before speaking such words the judge specifically referred to the defendant's prior misconduct as

3. From the sentencing transcript it appears the defendant had a prior adult criminal conviction. N.T. August 3, 1978, 31.

"juvenile adjudications". Moreover nowhere did the judge refer to these adjudications as *convictions*. When the remarks of the judge are read as a whole it is clear that he did not mistakenly view the defendants' delinquency adjudications as criminal convictions.

Defendant Allen's next argument is that the lower court erred in sentencing him on the conspiracy count since he was never found guilty of conspiracy. On the conspiracy count the court sentenced him to ten years' probation to run concurrent with the robbery sentence. In support of this argument defendant refers to the remarks of the judge at the end of the closing arguments. The judge stated that he found the defendants guilty of two counts of robbery and one count of possession of an instrument of crime. N.T. April 27, 1978, 213. Since the judge never *stated* that he was guilty of conspiracy, Allen argues that his sentence was improper. We are not persuaded by this argument. Nowhere does the judge state that he found the defendant not guilty of any of the charges. More importantly, however, the information for the conspiracy count shows a verdict of guilty was recorded on April 27, 1978, the date the trial ended, and was signed by the trial judge. *Commonwealth v. Huett*, 462 Pa. 363, 341 A.2d 122 (1975), establishes that recorded verdicts prevail over oral verdicts unless the party attacking them sustains his burden of proving that they did not reflect the "*obvious intention* of the trier of facts." *Id.*, 462 Pa. at 368, 341 A.2d at 124 (emphasis original).

In *Commonwealth v. Huett, supra*, the trial judge in a non-jury trial announced that the defendant was guilty, inter alia, of second degree murder. However, the verdict was recorded as voluntary manslaughter. At sentencing when the judge attempted to sentence the defendant for voluntary manslaughter the prosecutor objected and moved to correct the verdict. A hearing was held on the motion at which the court clerk testified that she believed that she had recorded the wrong verdict in the indictment. Nevertheless she also admitted that she had no "positive memory" about making a mistake and that the stenographer may have

erred. The lower court granted the motion and on appeal the Supreme Court vacated the sentence and reimposed the sentence the lower court had announced it would impose when it thought the verdict was voluntary manslaughter.

The court stated that "[b]efore the recorded verdict may be altered or amended, there must be a finding, and sufficient evidence to support that finding, that the recorded verdict did not reflect the *obvious intention* of the trier of facts. Moreover, the burden of proof is upon the moving party." *Id.*, 462 Pa. at 368, 341 A.2d at 124 (emphasis original).

We have reviewed the record in the instant case and find that there was sufficient evidence to support the conspiracy conviction. Further, we note that at the time of sentencing Allen did not object to his sentence, nor did he raise this issue in a petition to modify his sentence; in this appeal he raises this issue for the first time. Under *Commonwealth v. Huett, supra,* Allen has the burden of proving that the recorded verdict was erroneous. Having produced no evidence, he has failed to meet his burden of proof. Therefore, the recorded verdict stands. Moreover, by failing to raise this issue at the time of sentencing and in a petition to modify the sentence the issue is waived. *E. g., Commonwealth v. Walls,* 481 Pa. 1, 391 A.2d 1064 (1978); Pa.R. Crim.P. 1410.

Defendants next argue that certain physical evidence and evidence of the out of court identification of the defendants should have been suppressed since the arrest was not supported by probable cause. At the hearing on the motion to suppress three witnesses testified for the Commonwealth; the defense presented no testimony.

The Commonwealth's testimony showed the following. After the victims were released from the car in which the defendants had hit them and had taken their money, they telephoned the police. A police officer arrived and the victims gave him a description of the perpetrators and of the car in which they were riding. The officer then had this

information transmitted over the police radio. The broadcast indicated that the robbers were three males, one was wearing a jeff hat and green army jacket, the second was wearing a long black coat and black hat, and the third was wearing a checkered shirt and a brown jacket.[4] According to the broadcast they were driving in a green 1969 Buick Skylark which had a cracked windshield and the first three digits of the license were 797.

A little more than an hour after the robbery, within a mile from where the victims had been released, the arresting officer observed a brown 1969 Oldsmobile, with a cracked windshield, the first three digits of the license number 797, containing three male occupants one of whom was wearing a checkered shirt. He directed the car to stop and asked the driver to produce his license and the vehicle registration card. The driver produced neither; instead he showed the officer a document which purported to be a bill of sale. From outside the car, the police officer noticed a green army jacket and a long black coat in the car. The officer then took the two defendants and White into custody. They were brought to a place about one block from where the victims had been released from the car. The victims identified them as the perpetrators. The suspects were taken to the police station and money was taken from them which was later admitted into evidence at the trial.

4. Later the police officer telephoned a more detailed description of the perpetrators including their complexion, age, height, weight and clothing. Defendant Allen argues that the suppression court erred in finding that the broadcast stated that one of the perpetrators was wearing a checkered shirt. This argument has no merit. Allen relies on the fact that the officer who interviewed the victims and relayed the description for the radio broadcast did not testify at the suppression hearing that one of the perpetrators was wearing a checkered shirt, nor did Izzard, the victim, so testify during the trial. Nevertheless, the police officer who made the arrest testified that the broadcast described one of the perpetrators as wearing a checkered shirt. Moreover, neither the police officer who relayed the description nor Izzard affirmatively testified that a description of a checkered shirt was not given; they merely failed to state in their testimony that such description was given. We find no error in the factfinder's decision to credit the testimony of the arresting officer in this matter.

In *Commonwealth v. Kazior*, 269 Pa.Super. 518, 410 A.2d 822 (1979), *allocatur denied* (1980), we said:

A legal arrest without a warrant depends upon probable cause. *Commonwealth v. Pinney*, 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661 (1967), cert. denied, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967). Probable cause exists if the facts and circumstances which are within the knowledge of the police at the time of arrest, and of which they have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a suspect has committed or is committing a crime. *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Culmer*, 463 Pa. 189, 195, 344 A.2d 487, 490 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 428, 322 A.2d 119, 123 (1974); *Commonwealth v. Garvin*, 448 Pa. 258, 262, 293 A.2d 33, 35–36 (1972); *Commonwealth v. Bishop*, supra. The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton*, 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968). The standard of probable cause, however, must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause. *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976). In *Commonwealth v. Tolbert*, 235 Pa.Super. 227, at 230, 341 A.2d 198, at 200 (1975), this Court said: "When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the

same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial." *Commonwealth v. Devlin*, 221 Pa.Super. 175, 289 A.2d 237 (1972). *Id.*, 269 Pa.Super. at 523–25, 410 A.2d 824–25.

■ Here the arresting officer had probable cause to arrest the defendants. He saw a car near the scene of the robbery, a little more than an hour after the robbery. As the broadcast had reported, the car's windshield was cracked, the car's license had the first three digits of 797, the car was occupied by three males one of whom was wearing a checkered shirt.

Although the car was not a green 1969 Buick Skylark and instead was a brown 1969 Oldsmobile, we think this discrepancy was not significant. In *Commonwealth v. Sabb*, 269 Pa.Super. 206, 409 A.2d 437 (1979), *allocatur denied*, we held that a discrepancy between the description of the perpetrator given by the victim and the actual description of the arrestee did not suffice to undermine the existence of probable cause. In *Sabb* the victim described the perpetrator's sex, race, height, weight, items of clothing, facial hair, and type of glasses. The arrestee differed from this description since he wore a different type of glasses and a hat. *Id.*, 269 Pa.Super. at 214, 409 A.2d at 441.

Here considering the totality of the circumstances, we believe that there was sufficient correlation between the description reported on the radio and the description of the defendants and the car to constitute probable cause to arrest. Since there was probable cause to arrest, the defendants' argument fails.

■ Finally, defendants contend that the on-the-scene identification should have been suppressed. After the defendants were arrested, they were taken to within a block of the scene of the robbery, a little more than an hour after the robbery. The defendants were handcuffed in the back of a police van when the victims identified them without hesita-

tion. Defendants argue that the one-on-one identification was unduly suggestive since there were three police vehicles present at the scene, the defendants were handcuffed, and a police officer asked "Is this the three guys?"[5]

"Evidence of identification should not be received at trial if the circumstances of the pre-trial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification. [citations omitted]. However, absent some special elements of unfairness, we do not believe that prompt on-the-scene confrontations fall within this ambit of suggestiveness." *Commonwealth v. Turner*, 454 Pa. 520, 522, 314 A.2d 496, 498 (1974). Moreover, "while one-on-one confrontations are generally condemned, those which occur soon after the commission of crime are permissible if, indeed, not favored." *Commonwealth v. Bullock*, 259 Pa.Super. 467, 471, 393 A.2d 921, 923 (1978). In the instant case the identification was made a little more than an hour after the crime, was within one block from the crime scene, the victims had a good opportunity to observe the perpetrators, and the victims unhesitatingly identified the defendants. That the defendants were handcuffed and that the police asked the victims whether the defendants were the perpetrators do not in these circumstances constitute special elements of unfairness. *Commonwealth v. Turner, supra,* (police questions); *Commonwealth v. Perdie,* 249 Pa.Super. 406, 378 A.2d 359 (1977) (handcuffs); *Commonwealth v. Santiago,* 229 Pa.Super. 74, 323 A.2d 826 (1974) (same). Nor does the fact that there were three police vehicles constitute a special element of unfairness.[6] Therefore, the lower court did not err in denying the motion to suppress.

Judgments of sentence affirmed.

5. At the suppression hearing there was no testimony that this question had been asked; it was only at trial that Mr. Izzard, one of the victims, testified that this question had been asked.

6. One vehicle contained the victims, the other vehicle contained the defendants, and the third vehicle had led the vehicle with the defendants to the place where the victims were located.