COMMONWEALTH of Pennsylvania,
Appellee,

v.

Marvin MOYE, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 9, 2003.

Filed Nov. 14, 2003.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: GRACI, OLSZEWSKI, and CAVANAUGH, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, Marvin Moye ("Moye"), appeals from the judgment of sentence entered November 6, 2002, following his conviction for burglary and criminal trespass in the Court of Common Pleas of Philadelphia County. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 Moye challenges only the trial court's refusal to suppress the identification evidence offered against him. We shall therefore begin with the following pertinent facts as summarized by the trial court:

> The [C]ommonwealth evidence during the suppression hearing consisted primarily of the testimony of the complainant Sangmany Nasimeung ["Sangmany"] ... and her daughter Dougangchay Nasimeung ["Dougangchay"], supported by the testimony of Police Officer Vince Goodchild.
>
> On June 4, 2001, at 10:10 p.m., [Sangmany] who resided at 336 North 41st Street, apartment two[,] with her children, was sleeping on the couch on the second floor. [Sangmany] heard an intruder break into the third floor window and observed a man, later identified as [Moye], descending the stairway from the third floor. [Sangmany] watched [Moye] go to the VCR, then to the microwave and then over to [Sangmany, who was] pretending to be asleep on the couch. [Moye] retreated[,] climbed the stairs and left through the same window on the [third] floor.
>
> [Sangmany] called 911 and described the male intruder as a dark faced African-American wearing what appeared to be white long pants and no shirt.....
>
> Dougangchay Nasimeung was also a witness. She testified that she had observed a black male pass[ ]by her bedroom door which is between the window used by [Moye] for entrance to the house and the stairway which [Moye] descended and ascended. Although Dougangchay [ ] had not exited her bedroom while the intruder was inside the house, she watched as the intruder was attempting to flee from the balcony of the apartment. Dougangchay [ ] spoke to him out the window and said, directly to his face, "I see you." Dougangchay [ ] described the [intruder] as an African-American wearing beige pants and no top. Dougangchay [ ] identified [Moye] as the man she observed fleeing the apartment and climbing down the balcony. At ground level, there were bushes that [Moye] went thr[ough].
>
> Officer Goodchild testified that he received a radio call of a burglary in progress. Flash Information was relayed of a black male, no shirt, wearing gray

sweat pants exiting from the back window of the house. Within minutes Officer Goodchild and his partner observed a man matching the description running in the opposite direction of the apartment. [Moye] acted belligerently and asked, "why are you stopping me ... I'm a black man, can't run down the street." Officer Goodchild immediately noticed that [Moye] had fresh scrapes on [his] forearms, leaves in his hair and pollen stuck to his chest. During said encounter, [Moye] became irate and slurred racial comments to the police officers who were both white males. [Moye] proceeded to make a sudden darting movement to get away from the officers. [Moye]'s actions increased and he was cuffed for the protection of the police officers.

Opinion of the Court, 2/12/03, at 1–3.

¶ 3 The officers placed Moye in a police van and transported him to a location near the victims' residence. Sangmany and Dougangchay were brought to the van together and identified Moye as the man they had seen in their apartment that evening. Moye was the only individual in the van and was handcuffed during the show-up. Sangmany testified that she recognized the pants Moye was wearing and that his face and body were the same as the perpetrator's. N.T., 9/12/02, at 18–19. Sangmany was "90 percent" sure the man in the police van was the burglar. *Id.* at 26. Dougangchay recalled that as the officers led her and her mother to the van, they told her "they had someone" and had "found him running down the street all sweaty and just tired looking." N.T., 9/13/02, at 24. Dougangchay stated that she had no doubt that Moye was the man she had seen exiting her apartment, *id.* at 17–18, based primarily on his pants, face, and the fact that he was shirtless. *Id.* at

20–21. Dougangchay also remembered seeing Moye four or five times before in her neighborhood. *Id.* at 25. Following the positive identifications by the complainants, Moye was arrested and charged with burglary, 18 Pa.C.S.A. § 3502(a), criminal trespass, 18 Pa.C.S.A. § 3503(a), criminal mischief, 18 Pa.C.S.A. § 3304(a), and attempted theft, 18 Pa.C.S.A. § 901(a).

¶ 4 In a pre-trial motion to suppress evidence, Moye argued that the police lacked probable cause to place him under arrest and that the out-of-court identifications made by Sangmany and Dougangchay were unduly suggestive. Moye also argued that the suggestive out-of-court identifications would necessarily taint any subsequent in-court identifications by the complainants. The trial court conducted a two-day hearing and denied Moye's motion on September 13, 2002. He proceeded to a jury trial and on September 19, 2002, was convicted of burglary and criminal trespass.[1] The trial court sentenced Moye to a term of imprisonment of five to ten years for burglary and imposed no sentence for the lesser-included offense of criminal trespass. This timely appeal followed.

¶ 5 Moye raises the following issue on appeal:

Were [Moye]'s state and federal constitutional rights to due process of law violated because the lower court refused to suppress the complainants' in-court and out-of-court identifications of [Moye], where the Commonwealth failed to establish that the identification evidence was based upon a source independent of an unduly suggestive post-incident confrontation?

. . .

---

1. The Commonwealth nol prossed the charges of criminal mischief and attempted theft.

Brief for Appellant, at 2.[2]

## II. DISCUSSION

"Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa.Super.2000). Our scope of review is limited; we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon*, 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease*, 750 A.2d at 323–24 (quoting *In the Interest of D.M.*, 560 Pa. 166, 743 A.2d 422, 424 (1999)). *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002) (en banc). This is the standard of review we have applied in appeals challenging the denials of motions to suppress identification testimony. *See, e.g., McElrath v. Commonwealth*, 405 Pa.Super. 431, 592 A.2d 740, 742 (1991).

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *McElrath v. Commonwealth*, 405 Pa.Super. 431, 592 A.2d 740, 742 (1991). The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978). "Suggestiveness in the identification

process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath*, 592 A.2d at 742. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath*, 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983). Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Brown*, 417 Pa.Super. 165, 611 A.2d 1318 (1992).

*Commonwealth v. Meachum*, 711 A.2d 1029, 1034 (Pa.Super.1998), *appeal denied*, 556 Pa. 689, 727 A.2d 1119 (1998).

¶ 6 Critical to the resolution of this issue is the recognition that "[a]bsent some special element of unfairness, a prompt 'one on one' identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." *Id.* at 1034 (citing *Brown*). Therefore, despite Moye's argument to the contrary, the show-up procedures employed in this case do not, themselves, establish that they were suggestive. Instead, the factors identified by this Court in *Meachum* all weigh in favor of admissibility. Both witnesses had an op-

---

**2.** Moye does not specifically challenge the legality of his arrest on appeal, therefore we shall deem that issue abandoned.

portunity to view the perpetrator at the time of the crime. Sangmany watched Moye as he prowled through her apartment and was able to observe his clothing and body. She was also able to observe his face from a distance of four to five feet, for one to two minutes, as he attempted to ascertain whether she was sleeping. Dougangchay also observed Moye's clothing, body and face as she confronted him through the third-floor window. Both witnesses were essentially a captive audience during their respective encounters and, even though it was nighttime, were attentive enough to provide an accurate description of Moye to the police. Those descriptions may have been general, but both women recalled that the intruder was dark-skinned, wore light-colored pants, and was shirtless. Upon seeing Moye in the police van, Sangmany was 90% sure that he was the burglar while Dougangchay expressed absolute certainty. Finally, and most significantly, the police detained Moye and brought him to the show-up within minutes of the crime. The totality of the circumstances surrounding the victims' identifications, particularly the promptness with which they were completed, indicates to us that those identifications were completely reliable. Because "reliability is the linchpin in assessing the admissibility of a challenged identification[,]" *McElrath*, 592 A.2d at 743 (citation omitted), the identifications were, on that basis, properly admitted at Moye's trial.

■ ¶ 7 We also find no "special elements of unfairness" present here that would have given rise to an irreparable likelihood of misidentification by the witnesses. Turning to Moye's arguments in that regard, he contends that because he was displayed to the complainants alone and handcuffed in a police van that the procedure was unduly suggestive. However, this Court has consistently upheld out-of-court identifications of suspects conducted under the same conditions. *See, e.g., Commonwealth v. Allen*, 287 Pa.Super. 88, 429 A.2d 1113 (1981) (defendants handcuffed in back of police van, identified a little more than an hour after the crime). *See also McElrath*, 592 A.2d at 743 ("...prompt, one-on-one identification is not *per se* violative of the accused's constitutional rights, even where the accused has been returned to the scene of the crime in a police cruiser.") (citing *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955, 960 (1984)); *Commonwealth v. Bell*, 386 Pa.Super. 164, 562 A.2d 849 (1989) (same).

■ ¶ 8 That the complainants viewed Moye and identified him in each other's presence does not constitute a special element of unfairness. Although individual identifications by multiple witnesses are preferred, there is no absolute prohibition on so-called "group showings." *Commonwealth v. Carter*, 271 Pa.Super. 508, 414 A.2d 369 (1979) (defendant not prejudiced by group identification absent proof of influence by one witness on another). Likewise, it was not unfair to Moye to allow Dougangchay to serve as an interpreter for her mother. This procedure was, in our view, entirely appropriate here given the language barrier that existed and the expediency with which the police conducted their investigation. There is simply nothing in the record to support Moye's speculative assertions that either of the witnesses influenced the other during the identification process.

¶ 9 Equally unsupported by the record or Pennsylvania law is Moye's suggestion that the victims' "cross-racial" identifications were somehow inherently unreliable. We reject that argument without further discussion.

■ ¶ 10 Also unavailing is Moye's argument that Officer Goodchild influenced Dougangchay's identification by telling her

that "they had someone" for her to identify and had "found him running down the street all sweaty and just tired looking." This Court has previously rejected similar arguments. *See, e.g., Allen,* 429 A.2d at 1120–21 (one-on-one identification not unduly suggestive where police officer asked the witnesses "Is this the three guys?"). The fact remains that Dougangchay, having observed Moye as he exited her home, unhesitatingly identified him within minutes of the crime and, moreover, recognized him from her neighborhood. The reliability of Dougangchay's identification outweighs any possible suggestiveness created by Officer Goodchild's offhand remarks.

¶ 11 The record supports the trial court's conclusion that the show-up identification procedures used here were not tainted with suggestiveness. Accordingly, Moye's reliance on *Commonwealth v. Williams,* 323 Pa.Super. 512, 470 A.2d 1376, 1383 (1984), and related cases is misplaced. Brief for Appellant, at 3, 23–24, 29 and 33. The Commonwealth was not "required to prove by clear and convincing evidence that [the witnesses'] in-court identification ... ha[d] an independent origin sufficiently distinguishable from the illegal pre-trial identification so as to be purged of the primary taint." *Williams,* 470 A.2d at 1383 (footnote and citations omitted). There was, as the trial court concluded and the record as outlined above demonstrates, no illegal pre-trial identification which tainted the in-court identifications. Therefore, the trial court was not in error in concluding that the witnesses' subsequent in-court identification of Moye was proper. Opinion of the Court, 2/12/03, at 7.

### III. CONCLUSION

¶ 12 We have reviewed the challenged out-of-court identification evidence and, in consideration of the totality of the circumstances, find that it was reliable. The procedures employed by the police in this case illustrate the very purpose behind prompt on-the-scene identifications: to enhance reliability by reducing the time elapsed after the commission of the crime. There were no special elements of unfairness present that would have made the victims' identifications so suggestive as to give rise to an irreparable likelihood of misidentification. The findings of the trial court are amply supported by the record and there is no basis for disturbing the court's sound decision to admit the victims' out-of-court identification evidence. As the out-of-court identification evidence was properly admitted, we also affirm the trial court's decision to admit the victims' in-court identifications because there are no grounds upon which we could find them to be tainted.

¶ 13 Judgment of sentence affirmed.