J-S25010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARON BRIMAGE, | |
| Appellant | No. 1151 WDA 2014 |

Appeal from the Judgment of Sentence March 6, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012956-2012

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 22, 2015**

Appellant, Jaron Brimage, appeals from the judgment of sentence of 30 to 60 months' incarceration, followed by 5 years' probation, imposed after a jury convicted him of robbery (serious bodily injury) and conspiracy to commit robbery.  Appellant solely challenges the weight of the evidence to sustain his convictions.  After careful review, we affirm.

Appellant was convicted of the above-stated offenses following a jury trial on September 18 and 19, 2013.  On March 6, 2014, he was sentenced to the aggregate term stated *supra*.  Appellant filed a timely post-sentence motion challenging, *inter alia*, the weight of the evidence to sustain his

_____

[*] Retired Senior Judge assigned to the Superior Court.

robbery and conspiracy convictions. After conducting a hearing on Appellant's motion, the trial court denied it on June 19, 2014. Appellant filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents one issue for our review:

I. Did the trial court abuse its discretion in denying the post[-]sentence motion that the verdict was against the weight of the evidence insofar as no physical evidence tied [Appellant] to the crimes, and the identification testimony of the alleged victim, who was the only eyewitness, was unreliable due to the short period of time during which he observed the perpetrators, that his perceptions were impaired by stress and a head injury, and his attention was focused on the weapon, and the on-scene identification procedure was highly suggestive?

Appellant's Brief at 5 (unnecessary capitalization omitted).

To begin, we note that,

[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Hunzer*, 868 A.2d 498, 506-507 (Pa. Super. 2005), *appeal denied*, 584 Pa. 673, 880 A.2d 1237 (2005). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is

- 2 -

under no obligation to view the evidence in the light most favorable to the verdict winner." **Commonwealth v. Rossetti***, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004), *appeal denied,* 583 Pa. 689, 878 A.2d 864 (2005).

**Commonwealth v. Lewis**, 911 A.2d 558, 565-566 (Pa. Super. 2006).

Here, Appellant contends that the jury's verdict was contrary to the weight of the evidence because the verdict was based primarily on an unreliable identification by the victim, Monte Austin. Appellant argues that Mr. Austin's identification was not credible because he only observed the perpetrators for a brief time, "he could only describe their clothing and relative height," and the on-scene identification was suggestive where Appellant "was handcuffed and surrounded by uniformed police officers." Appellant's Brief at 14, 19. Appellant also claims that the jury should have discredited Mr. Austin's identification because there was no physical evidence corroborating it. *Id.* at 19.

In rejecting Appellant's weight-of-the-evidence challenge, the trial court first discussed Mr. Austin's demeanor and testimony at trial, as follows:

> The primary witness against [Appellant] was the victim, Mr. Monte Austin. It was clear to all involved in the case that Mr. Austin suffers from some mental disabilities. His employment through Achieva, a non-profit that serves and supports individuals with disabilities, and his involvement with Mercy Behavior Health, confirm this fact. Despite his difficulties, Mr. Austin provided clear, consistent testimony, which the jury apparently believed given its verdict.

Mr. Austin testified that on September 21, 2012[,] at 9:45 p.m., he exited a bus at a corner store on Race Street in the Homewood section of the City of Pittsburgh. He had just finished his work as a janitorial cleaner at Achieva. Mr. Austin went to the store, and then he headed home. As he was walking home, he was approached by two (2) men in hooded sweatshirts, one gray and one red. Neither man had his face covered. The men directed Mr. Austin to put his "hands up." Mr. Austin complied because the man in the gray hooded sweatshirt, whom Mr. Austin identified as [Appellant], had a gun, which he pointed at Mr. Austin's head.

After Mr. Austin put his hands in the air, the man in the red hooded sweatshirt locked his hands behind his head, while [Appellant] dug through his pockets. [Appellant] removed $17, [Mr. Austin's] wallet, his identification and his Connect Card (bus pass) from Mr. Austin's pockets. As the men were leaving, [Appellant] struck Mr. Austin in the head with the gun, causing him to bleed, and then took his bag of snacks that he had purchased at the store. As the men walked away, they were giggling.

Mr. Austin went straight home after this incident, and he called the police as soon as he arrived home. Mr. Austin described his assailants during the 911 call to the police, stating that both were black men and that the one with the red hooded sweatshirt was taller than the one with the gray hooded sweatshirt. The police arrived at [Mr. Austin's] home within five (5) to ten (10) minutes, and Mr. Austin provided the same description of his assailants. Officer Miller of the City of Pittsburgh Police Department transmitted Mr. Austin's description of his assailants to other police officers working the area. Within five (5) minutes of broadcasting the description of the actors, Officer Miller was informed that his colleagues had detained two (2) men matching the description. Officer Miller returned to Mr. Austin's home, which he had just left, and requested that Mr. Austin accompany him to attempt to identify the actors. Mr. Austin travelled in Officer Miller's police vehicle to a location a few blocks from Mr. Austin's home, where two (2) suspects, including [Appellant] were sitting on a low wall. As soon as Officer Miller asked Mr. Austin if the two (2) were the persons who robbed him, [Mr. Austin] indicated that they were. Mr.

Austin did not hesitate at all in identifying [Appellant] and his co-Defendant.

At the time of the identification of [Appellant] by Mr. Austin, [Appellant] was wearing a gray hooded sweatshirt. The second man at the scene was wearing a red hooded sweatshirt. The man wearing the red hooded sweatshirt was significantly taller than [Appellant]. Officer Miller retrieved a Connect Card at the location were the two (2) actors were identified by Mr. Austin. The Connect Card was located only one (1) foot from where [Appellant] and the co-Defendant were sitting on the low wall. Officer Miller presented that Connect Card to Mr. Austin, who identified it as his….

Trial Court Opinion (TCO), 10/23/14, at 2-5 (unnumbered; citations to the record omitted).

The trial court then went on to explain why it denied Appellant's claim that the jury's verdict was contrary to the weight of the evidence. The court stated:

[Appellant's] challenge to the weight of the evidence should be rejected. The jury's verdict turned on an assessment of the credibility of the witnesses, an assessment that was unfavorable to [Appellant], given that he was convicted of these charges. During trial, defense counsel cross-examined Mr. Austin at length about his identification of [Appellant], as well as the facts of the incident. Additionally, during her closing argument, defense counsel raised the primary question that is being raised on appeal, namely, that the identification of [Appellant] by Mr. Austin was based on limited observations and descriptions. It was the jury's province whether to accept or reject the issues and questions raised by defense counsel. That the jury chose to reject the defense attacks on the victim's credibility does not support an argument that the verdict was against the weight of the evidence. To put it simply, the jury believed the testimony of the victim. Both this court and any appellate court are without the power to revisit the jury's credibility determinations.

That the jury chose to believe the victim, Mr. Austin, does not shock this court's conscience or sense of justice. Mr. Austin was credible, consistent, and entirely believable in his testimony. He, on numerous occasions to several different people, described [Appellant and his co-Defendant] and their clothing. Two (2) young black men were found within minutes of the event, in the same area in which it occurred, and wearing clothing and having physical descriptions that matched Mr. Austin's descriptions. Mr. Austin immediately and certainly identified the two (2) men as being the men who robbed him. His Connect Card was found within one (1) foot of [Appellant and his co-Defendant]. While the Connect Card did not have any identification on its face, the card was tied to Mr. Austin's identity through a chip inside. When that chip was reloaded by Mercy Behavior Health there was no problem or indication that it was not Mr. Austin's card. The jury found the victim to be believable and credible. After hearing Mr. Austin's testimony, this court would not, even if it had that power, change the jury's credibility findings.

TCO at 5-6 (unnumbered; citations to the record omitted). Based on the court's detailed summary of the evidence presented against Appellant, and its discussion regarding the credibility of Mr. Austin's identification, we ascertain no abuse of discretion in the court's decision to deny Appellant's weight of the evidence claim.

However, because Appellant focuses a majority of his appellate argument on the ostensible suggestiveness of the on-scene identification, we add the following brief discussion. Appellant asserts that he was "presented to the victim in what may arguably be the most suggestive manner possible" because he was "handcuffed on the sidewalk while surrounded by six or seven uniformed officers." Appellant's Brief at 18. Appellant also contends that the on-scene identification was suggestive because he "was not

separated from the other suspect to ensure that the identifications would not be made solely on the bases of height and complexion disparities." *Id.* Finally, in a related argument, Appellant maintains that Mr. Austin "had a distorted view of the detained individuals" because he was in "the rear seat of a patrol car," Appellant was approximately 20 feet away" from Mr. Austin, and Appellant "was illuminated by ultra-bright lights coming from Mr. Miller's patrol car." *Id.*

Initially, Appellant cites no legal authority to support his argument that he and his cohort should have been separated before being viewed by Mr. Austin. Additionally, nothing in the portions of the record cited by Appellant indicate that Mr. Austin's view of him and his cohort was distorted because the windows of the police vehicle were "possibly tinted." Appellant's Brief at 18. Indeed, those excerpts of the transcript reveal that Mr. Austin was "sure" that Appellant was one of the men who robbed him because his assailants had not covered their faces and were still wearing the same clothing. N.T. Trial, 9/18/13-9/19/13, at 69. Additionally, when making the identification, Mr. Austin was only 12 feet away from Appellant and Appellant's face was illuminated with a spotlight. *Id.* at 80. Contrary to Appellant's argument, this evidence supports a conclusion that Mr. Austin had a *clear* view of Appellant when he identified him.

Additionally, this Court has repeatedly held that an identification is not unduly suggestive simply because the defendant is handcuffed and in police

custody when the identification is made. ***See Commonwealth v. Kearney***, 92 A.3d 51, 66 (Pa. Super. 2014) ("Appellant's argument that his identification by [the victim] was unduly suggestive because he was handcuffed to a bench at the State Police barracks does not merit relief.") (citing ***Commonwealth v. Armstrong***, 74 A.3d 228, 239 (Pa. Super. 2013) (concluding identification was not unduly suggestive even though the appellant was presented in handcuffs); ***Commonwealth v. Moye***, 836 A.2d 973, 977-978 (Pa. Super. 2003) (finding no "special elements of unfairness" where the appellant was shown to the complainants handcuffed in a police van); ***Commonwealth v. Allen***, 429 A.2d 1113, 1120 (Pa. Super. 1981) (finding denial of suppression motion proper even though defendants were handcuffed in the back of a police van when the victims identified them without hesitation)). Furthermore, as the Commonwealth points out, Officer Miller testified that as he transported Mr. Austin to the location where Appellant was detained, he told him "that the actors that robbed him *may or may not* be here…." N.T. Trial at 92 (emphasis added). Once at the scene, the officer's headlights illuminated Appellant's face and the officer "asked [Mr. Austin] if he recognized anyone." ***Id.*** Mr. Austin *immediately* identified Appellant and his companion as "the guys that robbed" him. ***Id.*** Considering these circumstances, and the case law cited *supra*, we do not agree with Appellant that Mr. Austin's on-scene identification was unduly suggestive.

Thus, for these reasons – and the reasons set forth by the trial court – we conclude that the court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2015