J-S28009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LESTER JACKSON, | |
| Appellant | No. 1889 EDA 2015 |

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001995-2012

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 12, 2016**

Lester Jackson appeals from the April 30, 2015 judgment of sentence of ten to twenty-three months house arrest with work release followed by three years probation, which was imposed following his robbery conviction. After careful review, we affirm.

The events giving rise to Appellant's conviction are gleaned from the testimony at trial.[1]  At 10:30 p.m. on June 16, 2011, Peter Konstantopoulos was robbed at gunpoint in the 1800 block of Bainbridge Street in Philadelphia by two men as he was walking home after dinner at a restaurant.  Mr. Konstantopoulos testified that he was texting from his cell

---

[1] Appellant and co-defendant Zakee Davis were tried together.  This was a re-trial following a jury trial that ended in a mistrial.

---

* Retired Senior Judge assigned to the Superior Court.

phone when he bumped into someone who was walking toward him. As he looked up to apologize, there were two men in front of him. The taller one demanded, "give us your stuff," and pointed a gun at his head. N.T. Trial (Waiver) Vol. I, 1/14/15, at 15. The victim tendered his wallet to the gunman and the two men fled east on Bainbridge and then turned south on 17th Street. The second man did not say anything during the robbery.

The victim telephoned 911 and Philadelphia Police Officers Aaron Horne, Jr., and his partner, Jonathan Ruth, responded to the call. The victim supplied physical descriptions of his assailants. The man with the gun was a black male approximately 5'11" or 6 feet tall, in his mid-twenties, and thinner than the victim. The second man was also a black male about 5'8" tall. The victim told police at the time that the gunman was wearing a maroon shirt and the other man was wearing a blue shirt, but at trial he could not recall which assailant was wearing which shirt. The victim entered the patrol car and accompanied the officers as they canvassed the area looking for the robbers. They drove into a parking lot where police officers had detained two men, whom Mr. Konstantopolous identified as his assailants. *Id*. at 44.

Sergeant Horne testified that when he and his partner, now Sergeant Ruth, arrived at the scene of the robbery, they immediately placed Mr. Konstantopolous in the back seat of their cruiser. *Id*. at 57. The victim provided a description of his assailants, which they flashed over the radio.

They surveilled the area for ten or fifteen minutes, and then pulled into a parking lot adjacent to an apartment building. The officer had seen movement in a minivan that was parked in the lot and its seats were reclined. He waited until two men exited the vehicle and then called to them so they would turn around. The officer asked the victim if the men were his assailants, and he responded in the affirmative. The victim pointed out, however, that they were now wearing different clothing: white undershirts.

Two other police officers, Christopher Warwick and Wayne Stinson, were on foot in the area of the parking lot. After the victim identified the men as his assailants, Officer Horne radioed the officers and directed them to stop the men. Officer Warwick brought Appellant and his cohort in front of Officer Horne's patrol car so that the car's headlights would illuminate their faces. The victim "was very confident and was sure that those were the guys." *Id*. at 59-60. Appellant and his co-defendant were placed into custody by Officers Warwick and Stinson, and transported to South Detectives. *Id*. at 60.

Officer Warwick, now a New Jersey State Police Trooper, testified that he and Officer Stinson were on foot near the apartment complex on 17th Street. Appellant and his co-defendant walked toward them. Pursuant to instructions he received over the radio, he briefly detained them for purposes of identification. After the victim positively identified the men as

his assailants, he took them into custody. A search warrant was obtained for the minivan and a blue shirt was recovered from the vehicle.

At trial, the victim again identified Appellant and his co-defendant as the perpetrators of the robbery. He testified that Appellant wielded the gun, which he described as small and dark gray or black, in color. Although the street where the robbery took place was dark, "you could see." *Id*. at 24. He stated that when he identified Appellant and his cohort in the parking lot after the robbery, the area was "more poorly lit than the street, but we had the headlights of the cop car to help me with lighting." *Id*. at 29. On cross-examination at trial, the victim steadfastly maintained that when he saw the two men in the minivan shortly after the crime, he "wholeheartedly believe[d]" they were the robbers. *Id*. at 50. He subsequently identified the two men at line-ups.

The trial court found Appellant guilty of robbery and not guilty of conspiracy.[2] Following sentencing, the Commonwealth filed a motion to modify Appellant's sentence to incarceration rather than house arrest. On June 9, 2015, after a hearing, the court denied the motion. Appellant timely filed the within appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial

---

[2] Co-defendant Davis was charged only with conspiracy and the trial court found him not guilty of that offense.

court filed its Rule 1925(a) opinion, and the matter is ripe for our review.

On appeal, Appellant presents one issue for our consideration:

> Was the evidence presented at trial sufficient as a matter of law to support the conviction for robbery under 18 Pa.C.S.A. § 3710(a)(1)(ii) where there was no evidence corroborating the identification made by the complainant, as the co-defendant also identified by complainant was acquitted by this Honorable Court, no proceeds of the robbery were recovered, the weapon utilized in the crime was not recovered, defendant and co-defendant approached police following the crime rather than fleeing, and the complainant was under the influence of alcohol and in circumstances undermining the reliability of his identification of defendant as a perpetrator?

Appellant's brief at 4.

In determining whether the evidence was sufficient to support a verdict, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the verdict winner, the Commonwealth herein. ***Commonwealth v. Watley***, 81 A.3d 108 (Pa.Super. 2013) (*en banc*). Furthermore,

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, we may not substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa.Super. 2005) (citations and internal quotations omitted). The issue is one of law, and our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Weimer***, 977 A.2d 1103, 1104-5 (Pa. 2009).

- 5 -

Although Appellant raises a challenge to the sufficiency of the evidence, he makes no claim that the Commonwealth has failed to offer proof of any specific element of robbery. Instead, he challenges the legal sufficiency of the victim's identification of him as the perpetrator of the robbery. He characterizes the victim's identification as uncorroborated, and maintains that other circumstances tended to undermine its reliability.

The record reveals the following. The victim observed his assailants for approximately two minutes as they stood within an arm's length. Although it was nighttime, he could see. The victim described Appellant, the gunman, as 5'11' or 6' tall, in his mid-twenties, and thinner than Appellant himself.[3] The gun he pointed at his head was small, dark gray or black in color, and largely covered up by Appellant's hand. Although the victim could see the barrel and the cylinder, he could not tell whether Appellant's finger was on the trigger. One of the men was wearing a blue shirt, the other a red or maroon shirt.

The victim positively identified his assailants within one-half hour of the robbery. He confirmed that identification from the back seat of the patrol car as Appellant and his co-defendant stood in the car's headlights.

_____

[3] In his original statement to police, Mr. Konstantopolous also described Appellant as unshaven, with a little bit of facial hair, short hair close to the head, and darker skinned. He was wearing a short sleeve maroon shirt and blue jeans.

Several months after the robbery, Mr. Konstantopolous identified Appellant at a line-up. He subsequently identified Appellant at the pre-trial, the first trial, and the instant trial.

The trial court herein acknowledged that the victim's identification was opinion evidence for the factfinder to weigh. Trial Court Opinion, 10/1/15, at 10, (citing **Commonwealth v. Sharpe**, 10 A.2d 120, 121-22 (Pa.Super. 1039)). The court added, "an identification made by a single witness is sufficient to convict as long as it carries some indicia of accuracy and reliability." Trial Court Opinion, 10/1/15, at 9. As the trial court correctly noted, there is no rule that eyewitness identification testimony be corroborated in order to sustain a conviction.[4]

The trial court looked to our decision in **Commonwealth v. Brown**, 23 A.3d 544, 558 (Pa.Super. 2011), where we were reviewing the propriety of a one-on-one identification. We held therein that the central inquiry was whether, "under the totality of the circumstances, the identification was reliable." **Id**. at 558 (citing **Commonwealth v. Moye**, 836 A.2d 973, 976 (Pa.Super. 2003)). In ascertaining the reliability of identification testimony in **Brown**, we applied the following factors: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of

---

[4] Neither the gun nor the proceeds of the robbery was recovered.

certainty demonstrated at the confrontation, and the time between the crime and confrontation." *Id*. (quoting *McElrath v. Commonwealth*, 592 A.2d 740, 743 (Pa.Super. 1991).

In *Brown*, the eyewitness, Golla, was six to twelve inches away from Brown when she saw his face. She described his appearance and identified him as the robber shortly after the robbery occurred. The jury, as the finder of fact at trial, heard her testimony and credited her identification as reliable. The trial court herein concluded that Mr. Konstantopolous's identification of Appellant and his co-defendant was, "in probative substance," equal to that of the eyewitness in *Brown*, *supra*.

Although this Court noted in *Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa.Super. 1983), that a "vague, tenuous and uncertain" identification standing alone is insufficient, we reiterated therein that, "evidence of identification . . . needn't be positive and certain in order to convict, and any indefiniteness and uncertainty in the identification testimony goes to its weight." (quoting *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973)). *Accord, Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). Herein, however, the victim's identification of Appellant was unequivocal. Furthermore, we agree with the trial court that, given the totality of the circumstances, the identification was sufficiently reliable to support Appellant's robbery conviction.

Appellant maintains, however, that the circumstances of this case "undermine, rather than corroborate, the reliability of the identification." Appellant's brief at 18.  In support of his position, he cites our High Court's decision in **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), where the Court noted that there were studies and scientific research which tended to discredit eyewitness identifications in certain circumstances.  For instance, Appellant points to a study described therein showing that when a weapon is used, focus shifts to the weapon, which impairs eyewitness memory and the accuracy of identification.  Additionally, Appellant relies upon a study mentioned in **Walker** that purportedly indicates that identification is less reliable in cases involving persons of different races and that accuracy is reduced when the event is a high stress criminal event.  Finally, Appellant discusses science finding little correlation between the witness's confidence in his identification and the accuracy of that identification.

Appellant would have us apply those phenomena to the circumstances herein, and find the eyewitness identification unreliable.  Appellant contends that the robbery was a high stress event for the victim as it occurred on a dark street at night.  A weapon distracted the victim from the faces of his robbers, and consequently, the description provided to police was non-specific.  The victim and his assailants were of different races, the encounter lasted two minutes, and it was dark.

The Commonwealth counters that these arguments go to the weight of the evidence rather than its sufficiency. The Commonwealth contends further, and Appellant concedes, that he did not preserve a weight claim as he failed to file a post-sentence motion. *See* Appellant's brief at 19 n.8. Thus, any challenge to the weight of the evidence is waived.

Appellant mischaracterizes *Walker*. Our Supreme Court did not definitively accept the conclusions from the research and studies involving eyewitness identification. The Court merely noted that such research existed in arriving at its holding that expert testimony regarding eyewitness identification is no longer *per se* impermissible in this Commonwealth. There was no expert testimony proffered in the instant case regarding the impact of a weapon, the involvement of a victim and assailant of different races, or the fact that the interaction was a stressful one upon the eyewitness identification. Furthermore, had there been such expert testimony, the factfinder would have been free to believe all, part, or none of that evidence, and to assess the credibility of the expert. *Commonwealth v. Diamond*, 83 A.3d 119, 134 (Pa. 2013). Such considerations go to the weight of the evidence, not to its sufficiency. Appellant waived any challenge to the weight of the evidence by failing to file a post-sentence motion.

The trial court, sitting as the finder of fact, concluded that the victim's identification of Appellant as the gunman was "of more than sufficient reliability, quantity and weight to support the conviction." Trial Court

Opinion, 10/1/15, at 7.  On the record before us, we have no basis to disturb that finding.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2016