J-S42007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT L. CASH, | |
| Appellant | No. 807 WDA 2015 |

Appeal from the PCRA Order April 28, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000844-2005

BEFORE:  SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 12, 2016**

Appellant, Robert L. Cash, appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On March 21, 2005, Appellant was charged with two counts each of rape and involuntary deviate sexual intercourse; one count each of robbery, burglary, criminal conspiracy, firearms not to be carried without a license; and five counts each of terroristic threats, unlawful restraint, recklessly endangering another person, and simple assault in connection with a home invasion on November 16, 2004, in McKeesport, Pennsylvania.  A jury

_____

[*] Former Justice specially assigned to the Superior Court.

acquitted Appellant of the two counts of rape and the single firearms violation and convicted him of all other charges on February 23, 2007.

We previously summarized the factual and procedural history as follows:

> On November 16, 2004, [Appellant] called his cousin, Joshua Cash [Joshua], and asked Joshua to participate in the robbery of the home of a purported drug dealer located in McKeesport, Pennsylvania. [Appellant] told Joshua, who agreed to aid [Appellant], that there were drugs in the residence. Later that day, [Appellant] and Joshua met with William Chaffin, and at 1:00 a.m. on November 17, 2004, the three men climbed onto the roof of the house and broke into it through a second-story window. [Appellant] and Chaffin were in possession of handguns while Joshua had a sawed-off shotgun. At that time, six people were present in the house: 1) T.M., the woman who owned the home; 2) T.M.'s daughter, J.M.; 3) J.M.'s six-year-old daughter, who will be referred to as Jane Doe; 4) J.M.'s three-year-old son, who will be referred to as John Doe; 5) T.W., who was the girlfriend of T.M.'s son, whose name was Robert Warren; and 6) T.W.'s five-month-old infant daughter with Robert Warren.
>
> After breaking in, [Appellant], Chaffin, and Joshua went downstairs to the living room, where T.M., J.M., T.W., John Doe, and T.W.'s infant daughter were located. Jane Doe was sleeping in a bedroom on the second floor and remained there during the ensuing criminal episode. [Appellant] and his accomplices pointed guns at the occupants of the living room, demanded drugs, and threatened to kill everyone present if the location of the drugs was not identified. T.M. informed the intruders that there were no drugs in the house. Chaffin became angry and pointed a gun at John Doe's head. Joshua intervened and told Chaffin to put down the weapon. At that point, J.M. and T.W. were ordered to remove their clothing, and T.M. took John Doe and the infant

into the dining room. At gunpoint, J.M. and T.W. were forced to perform oral sex on [Appellant], who was wearing a gray hoodie. Both women were able to view [Appellant's] face. After performing oral sex on [Appellant], T.W. was forced to perform oral sex on Chaffin, who also raped her. Then, [Appellant] forced J.M. to engage in sexual intercourse with him while he held a gun to her side. J.M. was able to clearly see [Appellant's] face during this assault.

While Chaffin and [Appellant] were sexually assaulting T.W. and J.M., Joshua started to search the house for drugs and cash. While Joshua was not able to locate drugs, he confiscated a number of J.M.'s belongings, including money and jewelry, and a pit-bull puppy. At that point, Robert Warren arrived at the house, and [Appellant], Joshua, and Chaffin fled. Robert Warren wanted to pursue the three criminals, but was stopped by the women since the three men were armed. Then, J.M. and T.W. went to the hospital where they were tested. Semen from Chaffin was found on T.W. Since [Appellant] had used a condom while assaulting J.M., no seminal fluid was discovered on that victim.

Based upon this evidence, a jury acquitted [Appellant] of two counts of rape and one count of carrying an unlicensed firearm, but convicted him of two counts of involuntary deviate sexual intercourse, one count each of robbery, burglary, and conspiracy, and five counts each of terroristic threats, unlawful restraint, reckless endangerment ("REAP"), and simple assault. The trial court ordered the preparation of a presentence report. The court sentenced [Appellant] on May 16, 2007, and corrected it the next day by a written order. The court imposed an aggregate sentence of thirty to sixty years' imprisonment followed by seventy years' probation.

*Commonwealth v. Cash*, [4 A.3d 674], 613 WDA 2008, unpublished memorandum at 1–4 (Pa. Super. filed June 3, 2010).

[Appellant] appealed his original judgment of sentence at the foregoing docket number and, following direction to the trial court to file a supplemental opinion to address the issue of the court's alleged bias in sentencing, we vacated the judgment of sentence and remanded the matter with direction that re-sentencing be held before another trial judge. We also concluded that multiple lesser-included offenses should have merged with other offenses at sentencing and found the evidence insufficient to sustain one count each of Terroristic Threats and Simple Assault. Although, on re-sentencing, the substituted trial judge convened a re-sentencing hearing, he received only the argument of counsel and did not take testimony, relying instead on the existing record. In advance of the court's pronouncement of sentence, defense counsel requested imposition of concurrent prison terms but acknowledged that the circumstances could also reasonably support consecutive terms. . . .

* * *

After receiving argument from the Commonwealth as well as an apology from [Appellant], the court imposed standard range sentences to run consecutively on two counts of IDSI (66 to 132 months each), and one count each of Robbery (66 to 132 months), Burglary (60 to 120 months), and Criminal Conspiracy (60 to 120 months). On the remaining counts, the court imposed either consecutive terms of probation or no further penalty yielding the aggregate sentence at issue of 23½ to 53 years in prison followed by 20 years' probation. Following imposition of sentence, [Appellant's] counsel filed a "Motion for Modification of Sentence" challenging the sentence as excessive. The court denied [Appellant's] motion, following which [Appellant] filed [an] appeal.

*Commonwealth v. Cash*, 38 A.3d 933, 423 WDA 2011, (Pa. Super. filed

November 29, 2011) (unpublished memorandum at 1–5).

In his direct appeal following resentencing, this Court affirmed the

judgment of sentence, stating, "[T]he sentencing scheme appears to reflect

the need of the public to be protected from [Appellant's] demonstrated

proclivities, while allowing him adequate time for rehabilitation should he avail himself of opportunities while confined." **Commonwealth v. Cash**, 423 WDA 2011 (unpublished memorandum at 11). Our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Cash**, 51 A.3d 837, 682 WAL 2011 (Pa. filed September 4, 2012).

Appellant filed a *pro se* PCRA petition on September 9, 2013, and appointed counsel filed an amended petition on July 16, 2014. Counsel filed a supplemental amended PCRA petition on March 5, 2015, the same day the PCRA court held an evidentiary hearing. The PCRA court dismissed Appellant's PCRA petition on April 28, 2015. Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

<u>First Issue</u>

Appellate counsel's decision not to challenge the trial court's denial of [Appellant's] suppression motion regarding J.M.'s and T.W.'s photographic identifications of [Appellant] was objectively unreasonable. The suppression issue was of arguable merit because J.M's and T.W.'s identifications were procured via highly suggestive identification procedures and there was a substantial likelihood they misidentified [Appellant]. Appellate counsel's deficient performance prejudiced [Appellant] on appeal because it deprived this Court from reviewing it and granting relief. U.S. Const. amdts. 5, 6, 8, 14; Pa. Const. Art. I, §§ 1, 9.1 Ex.

<u>Second Issue</u>

Trial counsel failed to identify facts relevant to the suggestiveness inquiry and to develop and present substantial, valid, and persuasive non-scientific and scientific evidence into

- 5 -

the record explaining how and why these facts demonstrated that the identification process and procedures were unduly suggestive. Trial counsel also failed to identify facts relevant to the accuracy inquiry and develop and present substantial, valid, and persuasive non-scientific and scientific evidence into the record explaining how and why these facts affected J.M.'s and T.W.'s ability to accurately capture, store, and recall the grey hooded perpetrator's facial features. Trial counsel's failures are objectively unreasonable and not based on strategic or tactical reasons and they prejudiced Mr. Cash by allowing the jury to hear unreliable and unduly suggestive identification evidence. U.S. Const. amdts. 5, 6, 8, 14; Pa. Const. Art. I, §§ 1, 9.

Appellant's Brief at 1–2.

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Hanible***, 612 Pa. 183, 204, 30 A.3d 426, 438 (2011) (citing ***Commonwealth v. Colavita***, 606 Pa. 1, 21, 993 A.2d 874, 886 (2010)). We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. ***Id***. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. ***See Commonwealth v. Reid***, 627 Pa. 151, 99 A.3d 470, 485 (2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Roney***, 622 Pa. 1, 16, 79 A.3d 595, 603 (2013).

***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

Initially, we are compelled to comment on Appellant's non-compliance with Pa.R.A.P. 2135, which provides, in pertinent part:

**(a)** Unless otherwise ordered by an appellate court:

(1) A principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words, except as stated in subparagraphs (a)(2)-(4). A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages or the reply brief is longer than 15 pages when prepared on a word processor or typewriter.

\* \* \*

**(b) Supplementary matter.** Supplementary matters, such as, the cover of the brief and pages containing the table of contents, tables of citations, proof of service and any addendum containing opinions, signature blocks or any other similar supplementary matter provided for by these rules shall not count against the word count limitations set forth in paragraph (a) of this rule.

\* \* \*

**(d) Certification of compliance. Any brief in excess of the stated page limits shall include a certification that the brief complies with the word count limits.** The certificate may be based on the word count of the word processing system used to prepare the brief.

Pa.R.A.P. 2135 (emphasis added). Excluding supplementary pages, Appellant's brief is sixty-seven pages in length, more than double the maximum page length prescribed by Rule 2135(a)(1). Moreover, the brief does not contain the certification required by Rule 2135(d). Further, counsel has not filed a petition requesting permission to exceed the brief's maximum word count and page limit. *See Commonwealth v. Roane*, ___ A.3d ___, ___ n.3, 2016 PA Super 124 at *19 n.3 (Pa. Super. filed June 15, 2016) (where the appellant's principal brief was 122 pages in length and counsel failed to certify it did not exceed 14,000 words, Superior Court would consider issues on their merits because counsel filed a petition requesting

permission to exceed the brief's maximum word count and page limit). This Court views deviations from procedural rules seriously, as evidenced by our ability to quash or dismiss an appeal for procedural noncompliance. Pa.R.A.P. 2101. Thus, we admonish counsel for his failure to follow the rules set forth by our Supreme Court. In light of the fact that the Commonwealth has not objected and in the interest of judicial economy, we address Appellant's arguments to the extent we are able to discern his claims.

In essence, Appellant asserts that appellate counsel was ineffective for failing to challenge the trial court's denial of trial counsel's motion to suppress J.M.'s and T.W.'s out-of-court photographic identifications. The following standards are applicable to claims of ineffective assistance of counsel:

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). **See Sepulveda**, 55 A.3d at 1117. This Court has recast the two-part **Strickland** standard into a three-part test by dividing the performance element into two distinct components. **Commonwealth v. Busanet**, 618 Pa. 1, 54 A.3d 35, 45 (2012); **Commonwealth v. Pierce,** 515 Pa. 153, 527 A.2d 973, 975 (1987). Accordingly, to prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. [**Commonwealth v.**] **Sepulveda**, 55 A.3d [1108,] 1117 [Pa. 2012] (citing **Pierce**, 527 A.2d at 975). To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Cox**, 603 Pa. 223, 983 A.2d 666, 678

(2009) (quoting **Commonwealth v. Williams,** 587 Pa. 304, 899 A.2d 1060, 1064 (2006)). Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. **Commonwealth v. Dennis**, 597 Pa. 159, 950 A.2d 945, 954 (2008). Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption. **Sepulveda**, 55 A.3d at 1117.

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. **Id**. at 1117–18; **Commonwealth v. Albrecht**, 554 Pa. 31, 720 A.2d 693, 701 (1998). Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim. **Commonwealth v. Jones**, 590 Pa. 202, 912 A.2d 268, 278 (2006).

**Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016).

We reject Appellant's claims that the circumstances of the victims' identifications of Appellant were highly suggestive, and we conclude that the PCRA court properly determined as much. We rely on the PCRA court's explanation, as follows:

First, [Appellant] claims that appellate counsel . . . rendered ineffective assistance of counsel because he did not appeal [the trial court's] denial of the motion to suppress J.M. and T.W.'s out-of–court photographic identifications. In the alternative, [Appellant argues] trial counsel was ineffective for failing to develop an adequate record and object to the factors that made the identification procedure unduly suggestive. According to [Appellant], the events surrounding J.M and T.W.'s photo identification were "highly suggestive."

The facts of the case at bar do not indicate the presence of any "highly suggestive" behavior or conduct surrounding J.M.['s] or T.W.'s identification of [Appellant]. J.M. testified that she recognized [Appellant] when he took her into the dining room where he forced her to perform oral sex on him and then raped

- 9 -

her, but at that time, she did not know his name. (TT, p. 69). [Appellant] argues that the victims identified him based on the "word on the street." However, J.M. stated when Detective Lopretto showed her the photo array, he did not tell her the name of the man she identified, and she only "put the name and the face together" once she viewed the photo array. (TT, pp. 69, 83, 130). T.W. also testified that she had never seen [Appellant] prior to the attack, and only heard the rumors on the street after identifying [Appellant] in the photo array. (TT, pp. 158, 177). Further, despite what [Appellant] contends, the record reflects that Detective Lorpetto only told the victims the names he was hearing in the McKeesport community after he spoke with the victims, and did not discuss the "word on the street" with them before showing them the photo arrays. (TT, pp. 340, 342).

The Pennsylvania Supreme Court has stated that the Standard of Review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from the facts are correct. ***Commonwealth v. DeJesus***, 860 A.2d 102, 112 (Pa. 2004).

These facts do not rise to the level of undue[] suggestiveness to make this claim of arguable merit. Even if the facts did lend themselves to that conclusion, the central inquiry in reviewing the propriety of identification evidence is whether, under the totality of the circumstances, the identification was reliable. ***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa. Super. 2003). The following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. ***Id***.

Suggestiveness in the identification process is merely a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. ***Commonwealth v. Kubis***, 978 A.2d 391, 396 (Pa. Super. 2009). Identification evidence will not be suppressed "unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial

- 10 -

likelihood of irreparable mis-identification." ***Commonwealth v. Burton***, 770 A.2d 771,782 (Pa. Super. 2001), appeal denied, 868 A.2d 1197 (Pa. Super. 2005), overruled on other grounds by ***Commonwealth v. Mouzon***, 812 A.2d 617,623 (Pa. 2002).

In the case at hand, J.M. had sufficient time to view the perpetrator who was not wearing a mask at the time of the crime and stated that she used a high degree of attention during the crime. (TT, 56-57, 69). J.M. stated that she "got a 'good look'" at [Appellant] when they were sitting "face to face" during the five-ten minute sexual intercourse. (TT, 68). Both J.M. and T.W. immediately identified [Appellant], and demonstrated a high level of certainty at the confrontation. When weighed against the alleged suggestive conduct, the additional factors for consideration outweigh any alleged suggestiveness surrounding J.M.['s] and T.W.'s identification of [Appellant] from the photo array. As such, trial counsel was not ineffective for failing to develop an adequate record or object to the identification process where it was quite apparent the identification was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Both J.M. and T.W. also made in court identifications of the [Appellant] as the one in the hoodie that sexually assaulted them.

Likewise, based upon the foregoing facts, [appellate counsel] had an objectively reasonable basis for not raising the issue of the suppression motion on appeal. "Arguably meritorious claims may be omitted in favor of pursing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." ***Commonwealth v. Pitts***, 844 A.2d 251, 254 (Pa. Super. 2005). Rather than pursue the instant claim, appellate counsel raised other matters that had a higher probability of success for his client on appeal. [Appellate counsel] was successful on all meritorious claims he made on appeal.

There is no evidence that [Appellant] was prejudiced "sufficiently to undermine confidence in the outcome" of his case. ***Strickland v. Washington***, 466 U.S. 668, 688 (1988). The victims not only had an opportunity to identify [Appellant] from a photo array, but also made an in-court identification. As such, even if there was any merit to the claim that the photo identifications were "highly suggestive," which they were not,

the motion to suppress was properly denied. The law in Pennsylvania requires a trial court to look at the totality of the circumstances when determining if an identification is reliable and whether the factual findings are supported by the record and whether the legal conclusions drawn from the facts are correct. ***Moye***, ***supra***, at p. 976 and ***DeJesus***, ***supra***, at p. 112. In the case at hand, the identifications were overwhelmingly reliable.

Finally, the trial court gave a jury instruction pertaining to how the jury should view the victims' identification[s] of [Appellant]:

> Now, [J.M. and T.W.] have identified [Appellant] as the individual—as one of the individuals—who committed these particular crimes. A victim or other witness can make a mistake in identifying an individual who committed the crime if certain factors are present. That is whether or not they were in a position to see that witness, whether or not they had ample opportunity to observe them, whether or not the individuals who committed the crime were wearing masks, whether or not the individual who was the victim of that crime was under certain pressures; and threats that would cause them to have difficulty in identifying the individual who perpetrated these crimes. If you believe that one or more of these factors are present, you should view identification testimony with caution. If you believe that these factors are not present, you will accept the victim's testimony as you will accept the testimony of any other witness.

(TT, 434).

For all of the reasons stated above, [Appellant's] claims are meritless and non-prejudicial. [The trial court] properly denied the suppression motion. And this [c]ourt properly denied the PCRA Petition.

PCRA Court Opinion, 11/25/15, at 14–19. We rely on the PCRA court's

disposition of this issue, adopting it as our own.

We also reject as meritless Appellant's reference to several purported scholarly articles, upon which he claims that the photographic array was improper because the detective presenting them showed them simultaneously rather than sequentially. Appellant's Brief at 61–66. Appellant suggests that trial counsel's "narrow focus also prevented him from researching the scientific literature regarding eyewitness identifications," and thereby failed to "develop evidence minimizing or discrediting the identification evidence." *Id*. at 64. As noted by the Commonwealth, expert testimony concerning flaws in eyewitness identifications was barred at the time of Appellant's trial. Commonwealth's Brief at 20. *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), was the first time our Supreme Court held that the admission of expert testimony regarding eyewitness identification was no longer per se impermissible. We will not find appellate counsel ineffective for failing to predict a change in the law. *See Commonwealth v. Gribble*, 863 A.2d 455, 464 (Pa. 2004) (counsel not ineffective for failing to predict changes in the law.). Thus, Appellant's second issue lacks arguable merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/12/2016</u>