J-A11023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
IAN FRANCIS MITCHELL :
:
Appellant : No. 1360 MDA 2018

Appeal from the Judgment of Sentence Entered March 7, 2018
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000163-2017

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 25, 2019**

Appellant, Ian Francis Mitchell, appeals from the judgment of sentence entered March 7, 2018, as made final by the denial of post-sentence motions by order dated August 8, 2018.  We affirm.

The following factual summary is based on the transcripts of testimony from Appellant's trial.  On March 8, 2017, the victim (hereinafter "I.D.") was ten years old.  I.D. testified that on the night of March 8, 2017, her step-father, Appellant, entered her bedroom and was not wearing any clothes.  I.D. testified that Appellant got into bed with her and removed her clothing.  Appellant then touched the outside of I.D.'s vagina with his hand, mouth, and penis.  She testified that he tried to put his hand, mouth, and erect penis inside of her but she managed to get him away by "kicking and punching, and yelling."  N.T., 1/25/2018, at 76.  I.D. indicated that Appellant left the room and came back a couple of times and tried the same thing each time.  Finally,

when Appellant left the room, I.D. left the house. At first, she hid outside, then she returned to the house to get a pair of boots. Then, wearing small pajamas and large boots, I.D. walked a quarter of a mile to a neighbor's house—the home of a girl with whom she went to school. It was 48 degrees and windy that night. One of the neighbors testified that I.D. appeared on her doorstep crying hysterically and that she said, "help, my step-dad is trying to rape me." N.T., 1/24/2018, at 174.[1] The neighbors called the police and an investigation followed.

During the investigation, I.D. took part in a forensic interview in which she described what happened to her. In the interview, I.D. used childish words such as "pee pee" when referring to her step-father's penis. At trial, the defense introduced I.D.'s diary into evidence. The diary contains entries that include vulgar words and descriptions of sexual scenarios. At trial, I.D. testified that she did not write all of the entries in the diary. She testified, "me and my friends write in it." N.T., 1/25/2018, at 122. I.D. also testified that March 7, 2017 was not the first time that Appellant assaulted her. She indicated that Appellant assaulted her regularly, at least five or more times.

The trial court summarized the procedural history of the case as follows.

[Appellant] was charged with six (6) counts of criminal attempt rape of a child, [a] felony in the [first] degree, six (6) counts [of] indecent assault of a person less than 13 years of age, [a] felony in the [third] degree, six (6) counts of simple assault, [a] misdemeanor of the [second] degree, and one (1) count of

---

[1] The neighbor's husband testified that I.D. said, "[c]an you please help me, my step-father tried to rape me, again?" N.T., 1/24/2018, at 185.

harassment [], a summary offense. The court held a jury trial from January 24, 2018 through January 26, 2018[,] after which the jury convicted [Appellant] of four (4) counts each of criminal attempt rape of a child, indecent assault of a person less than 13 years of age, and simple assault and the court found [Appellant] guilty of one count of harassment[.]

On March 7, 2018 the court sentenced [Appellant] to a minimum period of 84 months['] incarceration and a maximum period of 180 months['] incarceration on each criminal attempt rape conviction, [with the sentences to run consecutively], for an aggregate sentence of a minimum of 336 months [of] incarceration and a maximum of 720 months [of] incarceration. The court also sentenced [Appellant] to a minimum period of 12 months['] incarceration and a maximum period of 84 months['] incarceration on the first three convictions of indecent assault of a person less than 13 years of age and ran each of those sentences concurrently with the fourth count of criminal attempt rape of a child. On the fourth indecent assault conviction, the court sentenced [Appellant] to a probationary term of five (5) years and ran that sentence consecutively with the fourth criminal attempt rape conviction and the first three indecent assault convictions. In addition, the court sentenced the [Appellant] to a minimum period of [nine] months['] incarceration and a maximum period of 24 months['] incarceration on each of the simple assault convictions and ran them each concurrently with the fourth criminal attempt rape conviction and the first three indecent assault convictions. Finally, the court also ordered the [Appellant] be subjected to the registration requirements pursuant to the Sexual Offender Registration Notification Act as a Tier [Three] [O]ffender for each of the criminal attempt rape and indecent assault convictions.[]

Trial Court Opinion, 8/8/2018, 1-2 (unnecessary capitalization removed and footnote omitted). After some confusion regarding Appellant's representation and the timeliness of Appellant's motion to modify sentence and other

post-sentence motions,[2] the trial court permitted Appellant to file the post-sentence motions *nunc pro tunc*, and accepted them as timely. The trial court denied the motions by opinion and order dated August 8, 2018. This appeal followed.[3]

Appellant presents the following issues for our review.

1. Were the verdicts for four counts of attempted rape[], four counts of indecent assault [], four counts of simple assault[], and one count of summary harassment[], not supported by sufficient evidence? Did the [c]ourt err[] since the jury never rendered a verdict on count fifteen (simple assault)? Was the testimony and evidence [] based purely on [speculation, conjecture, and false testimony]? Was the evidence so contradictory and speculative that fundamental due process was violated pursuant to the Fourteenth Amendment of the United States Constitution?

2. Were the aforementioned verdicts against the weight of the evidence? As to count fifteen of simple assault, did the jury not reach a verdict? Were the verdicts of guilt such that the verdicts should shock the conscience of this Court since the verdicts were based on speculative evidence and conjecture and false testimony? Did the verdict violate the Fourteenth Amendment of the United States Constitution?

3. Did Judge Wheeler err in not granting a new trial on after discovered evidence [from] the handwriting expert and [I.D.]'s

_____

[2] Appellant's post-sentence motions requested relief based on supposed after-discovered evidence, in the form of handwriting analysis of I.D.'s diary. The analysis showed that I.D., in fact, wrote the page of the diary that included a description of sexual acts she wanted to perform with "hot boys." Defense Exhibit 2.

[3] Appellant filed a notice of appeal on August 17, 2018. On August 20, 2018, the trial court issued an order instructing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 31, 2018, Appellant complied. On October 12, 2018, the trial court issued its 1925(a) opinion, which adopted the reasoning of its August 8, 2018 opinion.

mother [showing] that the victim wrote the diary entries, which contained explicit and shocking entries about wanting boys to put their penis in her body and things of that nature, when [I.D.] denied at trial writing these entries and said her friend, J[.], wrote the entries[?] Did Judge Wheeler err in holding that this was used only for impeachment [of] credibility when, in fact, this false testimony undermined the entire truth finding process?

4. Did the Assistant District Attorney engage in prosecutorial misconduct during the trial when she asserted [I.D.] did not write the diary entries, but her friend, J[.], did? Did the Assistant District Attorney act improperly and mislead the jury when the Assistant District Attorney on her redirect examination of [I.D.], had her say that many entries were written by her friend, "J", and then argued [I.D.] did not write the diary page? Did the Assistant District Attorney blatantly mislead the jury and present false testimony on an extremely important issue and thereby taint the jury by her misconduct when after the trial, the Assistant District Attorney asserted [I.D.] did write the diary entries?

5. Was trial counsel ineffective and was the ineffectiveness apparent on the trial record when trial counsel allowed and/or introduced unrelated, prior conduct of [Appellant] that clearly tainted the jury and did not ask for a curative instruction?

6. Were the consecutive sentences imposed by Judge Wheeler resulting in 28 years to 60 years of incarceration an abuse of discretion? Did Judge Wheeler fail to state adequate reasons? Did Judge Wheeler fail to properly evaluate the requirement under 42 Pa.C.S.A. 9721(b), including the rehabilitative needs of [Appellant] and his family? Although the individual sentences are within the [s]entencing [g]uidelines, was the sentence collectively an abuse of discretion and a totally excessive sentence?

7. Did Judge Wheeler err in not allowing the defense to have a psychiatric examination of the alleged victim, [I.D.], when there were clearly psychological issues as to the competency and truthfulness of [I.D.]'s testimony? Did this error violate fundamental due process under the Fourteenth Amendment of the United States Constitution?

Appellant's Brief at 13-17.

Appellant's issues are essentially the same as the issues he presented in his post-sentence motions. We have reviewed the parties' briefs, the record, and the trial court's comprehensive opinion dated August 8, 2018. We conclude that the trial court's opinion adequately and accurately disposes of the issues on appeal with the exception of issues number four and six. Accordingly, we adopt the trial court's opinion as our own with regard to the other five issues,[4] and we will address only the allegation of prosecutorial misconduct and the challenge to the discretionary aspects of Appellant's sentence.

In the fourth issue, Appellant alleges that Assistant District Attorney Tiffany Cummings committed prosecutorial misconduct by "allow[ing] and assist[ing] in the presentation of false evidence to the jury." Appellant's Brief at 73. Specifically, Appellant argues that Attorney Cummings encouraged I.D. to provide false testimony and "brought out that J[.] wrote some of [the] entries [in the victim's diary]." Appellant's Brief at 69. This assertion is contradicted by the trial record. On cross-examination, defense counsel, William Korey, Esquire, asked I.D. about the contents of her diary. Attorney Korey referred I.D. to a specific entry, and it appears from the transcript that I.D. had trouble finding the entry at first.

---

[4] As such, we instruct the parties to attach the August 8, 2018 trial court opinion to all future filings pertaining to our disposition of this appeal.

[Attorney Korey]: Have you found it?

[I.D.]: Yes.

[Attorney Korey]: Okay, could you read it, so that I'm not putting words in your mouth, so the [j]ury could hear it?

[I.D.]: Most of this actually isn't mine.

[Attorney Korey]: Um-hum (in the affirmative).

[I.D.]: Could I say, like—could I say something?

[Attorney Korey]: Why don't you read it and then you can clarify it for us, okay?

[I.D.]: "This is what I want to do to some really hot boys; I want the boy to stick his dick in my vagina and ass, and have sex with them all day."

[Attorney Korey]: **Okay; and then Attorney Cummings will be able to ask you about that and you'll be able to kind of explain some of that.**

N.T., 1/25/2018, at 119 (emphasis added).

The following exchange took place between Attorney Cummings and I.D.

on redirect examination.

[Attorney Cummings]: You wanted to explain something about the writing in your diary. Do you want to go ahead and tell us what you wanted to say when you were claiming that you didn't write that one page?

[I.D.]: Me and my friend, ["J."], wrote some of—wrote some of those things.

[Question clarifying the name of I.D.'s friend]

[Attorney Cummings]: So, are you saying that both you and your friend wrote in this diary?

[I.D.]: Yes.

[Attorney Cummings]: Were you saying those specific words [sexually explicit words] were not yours?

[I.D.]: Some of them were and some of them weren't.

…

[Attorney Cummings]: Okay. Even if you, whether you were or were not the person who actually wrote the words dick, vagina and ass on that page, did you know those words as of March, 2017?

[I.D.]: Yes.

N.T., 1/25/2018, at 127-128.

"Prosecutorial misconduct includes actions intentionally designed to provoke the defendant into moving for a mistrial or conduct by the prosecution intentionally undertaken to prejudice the defendant to the point where he has been denied a fair trial." *Commonwealth v. Chmiel*, 777 A.2d 459, 464 (Pa. Super. 2001). Preliminarily, Attorney Cummings did not "bring out" the testimony as Appellant alleges. Attorney Cummings simply asked I.D. to clarify her testimony. Attorney Korey specifically told I.D. that Attorney Cummings would do so after refusing to allow I.D. to explain herself on cross-examination. I.D. began to explain that she did not write all of the diary during cross-examination by Attorney Korey.

While Appellant's handwriting expert concluded that the page in question was written by I.D., there is **absolutely no support** in the record for Appellant's bald assertion that Attorney Cummings somehow knew I.D. was not being truthful in her response. Therefore, Attorney Cummings **did not intentionally elicit false testimony**. Moreover, Attorney Cummings clarified that whether or not I.D. was the one who wrote the entry, she was familiar with those explicit words. Appellant places a great deal of emphasis

on the diary and the fact that I.D. allegedly lied about writing that page. Appellant introduced the diary to show that I.D. knew the types of graphic words that she pretended not to know in her forensic interview. I.D. admitted as much.[5] Therefore, Appellant was not prejudiced in any way by this allegedly false testimony.

Appellant also argues that the Assistant District Attorney misled the jury when she stated during her closing argument that I.D. did not write the particular page in the diary that contained the explicit words. According to Appellant, this misrepresentation was further exacerbated when the Assistant District Attorney indicated in the supplemental reply to Appellant's post-sentence motions that I.D. **did** write the page in question. Appellant argues that these representations by the Assistant District Attorney raise "very serious concerns about the integrity of the prosecution" and places the

_____

[5] Notably, I.D. also explained quite cogently why she pretended not to know the words in her interview,

> [Attorney Korey]: [C]an you help us understand why you testify—excuse me, why you make statements at one time in the forensic interview where you have a hard time describing body parts and you call your step-father's penis a pee pee and yet you're very descriptive in your diary of vagina, penis, and ass—
>
> [I.D.]: --because—because when you're writing things down, it's not talking to an adult. I'm sure when you're a kid, you don't say those kinds of things to adults, but you can say that to your friends or you can write it in your diary.

N.T., 1/25/2018, at 121.

"integrity of the trial . . . at issue." Appellant's Brief at 73. These arguments are meritless. Nothing in the record leads this Court to believe that the Assistant District Attorney lacked integrity or that her actions placed the integrity of the entire trial in question. To the contrary, the Assistant District Attorney acted professionally, responsibly and appropriately at all relevant times. The representations made by the Assistant District Attorney were based upon the information that she had at the time. As I.D.'s statements regarding the authorship of the diary were clarified during and after trial, the Assistant District Attorney properly represented her understanding of I.D.'s statements. The record does not contain any proof of prosecutorial misconduct. Appellant's fourth claim fails.

Turning to the sixth issue, Appellant challenges the discretionary aspects of his sentence. The trial court addressed this issue in its opinion of August 8, 2018. We agree with the trial court's assessment, but to dispose of the issue in the clearest way possible, we explain why Appellant failed to present a substantial question regarding the propriety of his sentence.

Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.* In order to reach the merits of a discretionary sentencing challenge,

> we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his or her

- 10 -

issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

*Commonwealth v. Foust*, 180 A.3d 416, 439 (Pa. Super. 2018) (cleaned up). Appellant's appeal is timely, he preserved the issue and his brief contains a concise statement of reasons relied upon in accordance with Pa.R.A.P. 2119(f). However, Appellant's concise statement fails to raise a substantial question that the sentence is inappropriate.

In his 2119(f) statement, Appellant argues that his consecutive sentences are "mean[-]spirited and harsh[.]" Appellant's Brief at 46. Appellant's sentence for each charge is within the standard guideline range. *See* 204 Pa.C.S.A. § 303, *et seq*.

> [A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). Appellant's statement contains slightly more than a bald claim of excessiveness, in that he mentions that the sentencing court failed to consider Appellant's rehabilitative needs. However, failure to adequately consider mitigating factors generally does not raise a substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). "Moreover, where, as here, the sentencing court had the benefit of a

pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Rhoades***, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotations and citations omitted).  As such, Appellant's case - a prosecution involving serial acts of attempted sexual violence against a child member of his own family - does not involve circumstances under which the application of the guidelines is clearly unreasonable.  Thus, Appellant failed to present a substantial question, and, he is not entitled to appeal the discretionary aspects of his sentence.  Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/25/2019

COMMON WEALTH OF PENNSYLVANIA

VS

IAN FRANCIS MITCHELL

IN THE COURT OF COMMON PLEAS

OF TIOGA COUNTY, PENNSYLVANIA

NO. 163 CR 2017

2018 AUG -8 PM 1:05

## OPINION

The Defendant, Ian Francis Mitchell, was charged with six (6) counts of Criminal Attempt Rape of a Child, Felony in the 1st degree, six (6) counts Indecent Assault of a Person Less than 13 Years of Age, Felony in the 3rd degree, six (6) counts of Simple Assault, Misdemeanor of the 2nd degree, and one (1) count of Harassment – Subject Other to Physical Contact, a Summary offense. The court held a jury trial from January 24, 2018 through January 26, 2018 after which the jury convicted Defendant of four (4) counts each of Criminal Attempt Rape of a Child, Indecent Assault of a Person Less than 13 Years of Age, and Simple Assault and the court found Defendant guilty of one count of Harassment – Subject Another to Physical Contact.

On March 7, 2018 the court sentenced the Defendant to a minimum period of 84 months incarceration and a maximum period of 180 months incarceration on each Criminal Attempt Rape conviction and for the sentences to run consecutively, for an aggregate sentence of a minimum of 336 months incarceration and a maximum of 720 months incarceration. The court also sentenced Defendant to a minimum period of 12 months incarceration and a maximum period of 84 months incarceration on the first three convictions of Indecent Assault of a Person Less than 13 Years of Age and ran each of those sentences concurrently with the fourth count of Criminal Attempt Rape of a Child. On the fourth Indecent Assault conviction the court sentenced Defendant to a probationary term of five (5) years and ran that sentence consecutively with the fourth Criminal Attempt Rape conviction and the first three Indecent Assault

Exhibit "B"

convictions. In addition, the court sentenced the Defendant to a minimum period of 9 months incarceration and a maximum period of 24 months incarceration on each of the Simple Assault convictions and ran them each concurrently with the fourth Criminal Attempt Rape conviction and the first three Indecent Assault convictions. Finally, the court sentenced the Defendant to 45 to 90 days on the Harassment conviction and ran the sentence concurrently with the fourth Criminal Attempt Rape conviction. The court also ordered the Defendant be subject to the registration requirements pursuant to the Sexual Offender Registration Notification Act as a Tier 3 offender for each of the Criminal Attempt Rape and Indecent Assault Convictions.[1]

During the majority of pre-trial proceedings, trial, and sentencing Defendant was represented by Attorney William Korey, Esq. After sentencing Defendant applied for, and qualified for, appointed counsel and the court appointed Attorney Edward J. Rymsza, Esq. At this point there was confusion over who represented Defendant as he did not want Attorney Rymsza to represent him and Attorney Korey continued to submit filings. Eventually, Defendant privately retained Attorney Samuel Stretton, Esq. to represent him and Attorney Korey continued to represent Defendant as co-counsel and Attorney Rymsza was ultimately permitted to withdraw his representation.

In the middle of the confusion over Defendant's representation, Attorney Korey filed, among multiple other filings, a Motion to Modify Sentence on March 19, 2018 and a motion titled "Motion To Set Aside Verdict With Request For An Evidentiary Hearing, And With Companion Motion For Recusal Seeking A Replacement Judge Rule On Enclosed Requests For

---

[1] The court did not order the Defendant to undergo an evaluation with the Sexual Offender Assessment Board (SOAB) prior to sentencing because at the time of the Defendant's conviction the Sexual Violent Predator designation had been found unconstitutional and the SOAB was not performing evaluations. See Commonwealth v. Butler, 173 A.3d 1212 (Pa.Super. 2017).

Relief" (hereinafter "Post-Sentence Motion") on March 21, 2018. The Motion to Modify Sentence was timely filed under Pa.R.Crim.P. 720 as the tenth day after sentencing fell on a weekend and Attorney Korey filed the motion that Monday. Attorney Korey, however, filed the Post-Sentence Motion two days later. On April 3, 2018, however, the court issued an Order accepting all previous filed post-sentence motions *nunc pro tunc* and considering them timely filed.

Subsequent to the court's April 3rd Order, Attorney Korey filed a motion titled "Four Post-Conviction Companion Motions Seeking Special Relief" (hereinafter "Amended Post-Sentence Motion I) on April 25, 2018. Attorney Stretton then field an Amended Motion to Modify And Reconsider The Sentence and Amended Motion For A New Trial And Arrest Of Judgment (hereinafter "Amended Post-Sentence Motion II) on or about June 26, 2018. The court held a hearing on all post-trial motions on July 5, 2018. At that hearing the Defendant, through Attorney Stretton, orally abandoned all motions filed by Attorney Korey, except for a request for the return of property which is not ripe at this time as the case is still pending, and argued only those motions filed by Attorney Stretton.

On March 20, 2018 the Commonwealth filed an objection to Defendant's motion to modify sentence arguing the motion was filed more than ten days after sentencing. The Commonwealth also filed an objection to Defendant's Amended Post-Sentence Motion II claiming it was amending an untimely filed motion, either the Post-Sentence Motion or Amended Post-Sentence Motion I, and was therefore itself untimely. The Commonwealth now concedes the original Motion to Modify Sentence was timely filed and therefore the Amended Motion to Modify Sentence was an amendment to a timely filed motion but continues to argue the original Post-Sentence Motion was untimely. The court, however, is permitted to grant a

defendant the right to file post-sentence motions *nunc pro tunc* for sufficient cause as long as the motions were filed within thirty (30) days of sentencing. Commonwealth v. Dreves, 839 A.2d 1122, 1128 (Pa.Super. 2003). If the court chooses to grant a defendant the right to file post-sentence motions *nunc pro tunc* it must do so expressly. Id. Sufficient cause existed in this case due to the confusion over Defendant's representation at the time the post-sentence motions were required to be filed. In addition, as the Post-Sentence Motion was filed only two (2) days after the timely Motion to Modify Sentence there was no prejudice to the Commonwealth by the court's acceptance of the Post-Sentence Motion. The court expressly granted the Defendant the right to file the Post-Sentence Motion *nunc pro tunc* through its April 3, 2018 Order considering all previously filed motions as timely. Since the original Post-Sentence Motion was filed prior to the court's April 3rd Order the court accepted the motion as timely. Therefore, both amended post-sentence motions amended a timely filed motion to modify and are themselves timely.

Furthermore, both amended post-trial motions request relief based upon the purported discovery of after discovered evidence. Such motions are not governed by the time requirements of Rule 720(A)(1) but are rather governed by Rule 720(C) which requires such motions to be filed "promptly after such discovery." Pa.R.Crim.P. 720. The Commonwealth makes no allegation the Amended Post-Sentence Motion I was not filed promptly after the defense discovered the purported after discovered evidence but rather lumps all the motions together without addressing the different timeliness requirements.

As all Defendant's motions were timely filed the court will address the merits of the Amended Post-Trial Motion II and the Amended Motion to Modify Sentence.

## I.    Evidence Insufficient to Support the Verdict

The first issue Defendant raises in his Amended Post-Sentence Motion II is the evidence produced at trial is insufficient to support the guilty verdicts for the four (4) counts each of Attempt Rape of a Child, Indecent Assault and Simple Assault. When considering an insufficiency of the evidence claim the court must review all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. Commonwealth v. Castelhun, 889 A.2d 1228, 1232, (Pa.Super. 2005). In doing so the court must not substitute its judgment for that of the jury as fact finder but rather must determine if the evidence presented enabled the jury to find all elements of the offenses were established beyond a reasonable doubt. Id. The court should uphold the jury's verdict unless the evidence produced at trial was "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Id. (citing Commonwealth v. Toney, 884 A.2d 291 (Pa.Super. 2005)). Furthermore, "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." Id. (quoting Comonwealth v. Bishop, 742 A.2d 178, 189 (Pa.Super. 1999)).

An individual commits Criminal Attempt when "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. §901(a). Rape of a Child is when a person has sexual intercourse with a complainant under the age of thirteen (13). 18 Pa.C.S. §3121(c). Indecent Assault of of a Person Less than 13 years of age occurs when a person has indecent contact with a complainant and the complainant is under the age of thirteen (13) at the time. 18 Pa.C.S. §3126(a)(7). Finally, Simple Assault, as charged in this case, requires a person to attempt by physical menace to put another in fear of imminent serious bodily injury. 18 Pa.C.S. §2701(a)(3).

At trial the only evidence the Commonwealth presented regarding the alleged assaults was the victim, I.D.'s, testimony. I.D. testified that on the night of March 8, 2017 she was lying in bed in her bedroom in the home she shared with her mother, stepfather (the Defendant), and brothers in Millerton, Pennsylvania when the Defendant entered the bedroom naked. Trial Transcript, Day 2, January 25, 2018, 72-73. She testified the Defendant then climbed into bed with her and took off some of her clothes. Id. After taking off some of her clothes, I.D. testified, the Defendant touched her vagina with his hand, tongue, and penis and attempted to insert all three body parts into her vagina, but was unsuccessful. Id. at 74-75. I.D. testified she was able to get the Defendant off of her by kicking him, punching him, and screaming. Id. at 76. According to I.D., the Defendant left and reentered her bedroom multiple times that night and when he would reenter he would perform the same actions. Id. at 78.

Later in her direct examination, I.D. testified the Defendant touched her vagina five (5) or more times prior to the night of March 8, 2017 while the family lived at the Millerton house. Id. at 88-90. She stated that during those five (5) or more previous incidents the Defendant touched her vagina with his mouth and penis. Id. at 92.

I.D. also testified to her age and date of birth and, therefore, the age requirements for the Criminal Attempt Rape and Indecent Assault, as charged, were met. Id. at 55.

I.D.'s testimony that on March 8, 2017 Defendant entered her room, disrobed her, touched her vagina with his hand, mouth, and penis, and attempted to insert each body part into her vagina was sufficient for the jury to find him guilty of one count each of Criminal Attempt Rape, Indecent Assault, and Simple Assault. By attempting to insert his penis into I.D.'s vagina Defendant took a substantial step towards having sexual intercourse with I.D. when she was

under the age of thirteen (13). His intent to have sexual intercourse with her can be inferred by his actions of attempting to insert his penis into her vagina. *See* Commonwealth v. Chance, 458 A.2d 1371, 1374 (Pa.Super. 1983). In touching I.D.'s vagina with his hand, mouth, and penis, Defendant had indecent contact with I.D. when she was under the age of thirteen (13). Defendant's actions in the bedroom also gave the jury sufficient evidence that he attempted through physical menace to put I.D. in fear of imminent serious bodily injury as by placing his mouth, hand, and penis on her vagina a jury could have reasonably believed I.D. was in fear of imminent serious bodily injury.

Defendant's actions on March 8th were also sufficient for the jury to find him guilty of an additional count each of Criminal Attempt Rape, Indecent Assault, and Simple Assault. I.D. testified that after Defendant assaulted her the first time that night he exited and reentered the room on multiple occasions. Upon his reentry Defendant assaulted I.D. in the same manner he did during the initial assault. While I.D. did not testify as to how many times the Defendant exited and reentered the room that night, the jury, based on I.D.'s testimony, could have reasonably inferred that at least one additional assault took place subsequent to the initial one. Thus the evidence was sufficient to sustain a second conviction on each charge based on Defendant's actions on the night of March 8, 2017.

In addition to the assaults on March 8th, I.D. testified Defendant assaulted her on five (5) or more previous occasions by touching her vagina with his mouth and penis. The jury could have reasonably found that by touching I.D.'s vagina with his penis Defendant took a substantial step towards having sexual intercourse with her. They also could reasonably infer that by touching I.D.'s vagina with his penis Defendant manifested the intent to have sexual intercourse with I.D. These are the two requirements necessary to sustain a conviction for Criminal Attempt

Rape and the jury's finding of both of them is supported by I.D.'s testimony, as viewed in the light most favorable to the Commonwealth. The fact that Defendant did not follow through with having sexual intercourse with I.D. during these assaults does not negate his intent to do so or the substantial step he took in furtherance of doing so. I.D.'s testimony of these previous assaults also provides sufficient evidence to support convictions of Indecent Assault and Simple Assault. The evidence is thus sufficient to support the jury's convictions of Defendant for two more sets of counts of Criminal Attempt Rape, Indecent Assault, and Simple Assault.

In light of the above, and as the testimony of the victim in a sexual assault case is sufficient in and of itself to support a conviction, the court will deny Defendant's request for a new trial or arrest of judgment based on insufficiency of the evidence.

## II.     Weight of the Evidence

Defendant also asserts the jury's verdict was against the weight of the evidence presented at trial. The question of the weight of the evidence is almost exclusively in the hands of the jury as finder of fact. Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003)(internal citations omitted). A court should only overturn a jury's verdict if it is so against the evidence as to shock ones sense of justice. See Id. The jury, as fact finder, is free to believe all, some, or none of the evidence presented and it is their role to make all credibility determinations. Id.

The trial in this case lasted three days with testimony from multiple witnesses, including lengthy cross-examinations. With that being said, the case essentially boils down to the testimony of two witnesses, I.D. and the Defendant. I.D. testified the Defendant sexually assaulted her on multiple occasions. The Defendant testified he did no such thing and I.D. was making all of this up. There was no physical evidence or third party eye witness testimony. The

case was a classic she said he said. After hearing the testimony, the jury apparently believed I.D. over the Defendant. They found her testimony more credible than his. That was their prerogative as the fact finder. The finding is not so against the evidence as to shock the court's sense of justice and the court will, therefore, not overrule the jury's determination. The court will deny Defendant's request for a new trial and arrest of judgment based on his weight of the evidence claim.

III. Error in Not Allowing a Psychiatric Evaluation of I.D.[2]

Defendant's next post-sentence motion is a request for a new trial based on the court's denial of Defendant's pre-trial motions for the court to require I.D. to undergo a psychiatric evaluation. A trial court has the authority to order a victim to undergo an involuntary psychological evaluation if there are concerns regarding the victim's competency to testify as a witness. Commonwealth v. Boich, 982 A.2d 102 (Pa.Super. 2009). Given the serious privacy implications of such an order, however, the involuntary psychological evaluation should not be the starting point for a competency review but should rather only be required when the "record unequivocally demonstrates a compelling need for the examination." Id. at 110 (citing Commonwealth v. Alston, 864 A.2d 539 (Pa.Super. 2004)(en banc)). The court is unaware of, and Defendant does not present any, legal authority that would permit it to force a witness to undergo an involuntary psychological evaluation for any other reason.

Defendant's argument is based on the allegation the court erred in redacting a psychological examination of I.D. provided to the Defendant before trial that was contained in

---

[2] The court notes Defendant's Amended Post-Sentence Motion II refers to the court's denial of a request for a Psychiatric evaluation while Defendant's pre-trial motions requested the court order I.D. undergo a psychological evaluation. This discrepancy does not alter the court's analysis.

the Tioga County Department of Human Services records and that I.D.'s diary contradicts "most of what the victim…said." Initially, when a defendant requests records from a family service agency, the court is required to perform an in camera review and then provide the defendant with anything he or she is entitled to. Pennsylvania v. Ritchie, 480 U.S. 391 (1987). That is the exact process the court undertook in this case. No part of the redacted portion of the psychological evaluation contained any information the Defendant was entitled to. The court does not believe a defendant should be entitled to an entire document merely because he or she is entitled to a portion of the document. Nor does the court believe the Defendant should be entitled to a document just because of its inclusion in a family service record when he would not otherwise be entitled to it.

Secondly, the assertion I.D.'s diary "contradicted most" of what she said is a gross mischaracterization of the contents of the diary. The diary does not contradict I.D.'s testimony of the circumstances of the night of March 8, 2017 as the diary does not address those events. The diary does not contradict I.D.'s testimony regarding earlier incidents of abuse perpetrated by Defendant as the diary does not address those incidents. The diary cannot contradict statements or testimony it does not address.

Finally, and most importantly, the above arguments are not the ones trial counsel made in his request for the court to order I.D. to undergo a psychological evaluation. On August 29, 2017, as part of his consolidated pre-trial motions, trial counsel filed a motion requesting I.D. undergo a psychological examination. This motion was four (4) paragraphs long and asserted counsel became a aware of mental health and behavioral health issues of I.D., the Defendant, I.D.'s step-father, and her motion were concerned about I.D.'s wellbeing, and that a psychological evaluation would be beneficial to the prosecution in the interest of justice and was

in I.D.'s best interests. The court denied this request. On January 19, 2018 trial counsel filed motion requesting the court reconsider its previous denial of the Defense request for I.D. to undergo a psychological examination. That motion reiterated the reasons included in the original motion and added the assertion "it is crucial that her mental health be evaluated, especially as linked to her false representation by way of so-called forensic tape recorded presentation at the Habeas proceeding, as contrasted with her written revelations in her diary."

Absolutely nothing contained in the original motion requesting the psychological evaluation comes close to alleging I.D. was incompetent to testify at trial. The most generous reading of the motion for reconsideration is that there is a contradiction between what I.D. said during a forensic interview at the Children's Advocacy Center and what she wrote in her diary. This contradiction, however, would clearly go to I.D.'s credibility as a witness and not her competency. The record is devoid of any evidence of I.D.'s incompetence let alone the unequivocally compelling evidence required to overcome her privacy rights and force her to undergo an involuntary psychological evaluation.

The court correctly denied Defendant's requests for I.D. to undergo a psychological evaluation and will therefore deny his post-sentence motion for a new trial based on the court's denial of that request.

IV.    After Discovered Evidence

The Defendant next asserts he is entitled to a new trial due to the discovery of new evidence after his conviction. To be entitled to a new trial based on after discovered evidence, a Defendant must show the evidence "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence, (2) is not merely corroborative or cumulative;

(3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." Commonwealth v. Padillas, 997 A.2d 356, 363 (Pa.Super. 2010)(quoting Commonwealth v. Pagan, 950 A.2d 270, 292 (Pa. 2008)). If all four requirements are not met then the defendant is not entitled to a new trial.

The purported after discovered evidence put forward in this case is the testimony of a handwriting expert who testified at the hearing on the post-sentence motions that I.D. is the individual who wrote everything in the diary presented to her at trial, in apparent conflict with her testimony that some of the entries were written by a friend of hers. This testimony does not satisfy all four requirements necessary for a new trial based on after discovered evidence as its sole purpose would be to attack I.D.'s credibility. She lied about not writing all the entries in the diary therefore she is also lying about the allegations of abuse by Defendant. The handwriting testimony provides no substantive value.

In his Amended Post-Sentence Motion II the Defense contends "[t]his new evidence will not be used solely to impeach the credibility of [I.]D. It will be used to show that the diary was, in fact, her hand and all that it contained was what she wrote, and not what she said at trial." (emphasis added). The court agrees that at a new trial the Defense would attempt to use the handwriting expert's testimony to show the truth was not what I.D. said at trial. The court is also unable to describe a more perfect example of using evidence solely to impeach a witness' credibility.

In a filing subsequent to the post-sentence motions hearing, the Defendant notes the Commonwealth's shifting arguments regarding I.D.'s testimony about the diary and the implications of said testimony. While it is true the Commonwealth makes different arguments in

their post-sentence filings than they did at trial that shift does not alter the purpose the Defendant would use the handwriting expert's testimony for at a new trial. The testimony would still be used solely to impeach I.D.'s credibility.

As the handwriting expert's testimony does not satisfy the requirement of not being used solely for impeachment purposes the court does not need to analyze the other three after discovered evidence requirements. The court will, therefore, deny Defendant's motion for a new trial based on after discovered evidence.

## V.    Ineffective Assistance of Counsel

The Defendant also requests a new trial based on allegations of ineffectiveness of trial counsel, specifically trial counsel allowing the jury to hear testimony of certain prior bad acts. Generally, issues of ineffectiveness of trial counsel will not be considered in post-sentence motions or on direct appeal and must rather wait for collateral review. Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002). There are two specific instances when a trial court has discretion to address issues of trial counsel's ineffectiveness on post-sentence motions. Commonwewalth v. Holmes, 79 A.3d 568, 598 (Pa. 2013). The first instance is when discrete claims are obviously meritorious from the record to the extent immediate consideration is in the interest of justice. Id. The second instance is when there is good cause shown for the trial court to address the claims and the defendant makes an express waiver of certain future PCRA rights. Id. at 599.

The allegations of ineffectiveness raised in Defendant's Post-Trial Motion II do not meet the requirements set out by the Supreme Court to permit the court to address them in post-sentence motions. The claims are not the type that are so obviously meritorious from the record that the interests of justice require the court to address them on post-sentence motions. The

Amended Post Sentence Motion II also does not include an express waiver of Defendant's future PCRA rights and no such waiver was placed on the record during the hearing on the motion. To be clear, the court is not making any judgment on the validity of the ineffectiveness claims raised by the Defendant, or any other possible instances of ineffectiveness by trial counsel. The court is merely saying the proper time to consider those claims is through any possible future PCRA proceedings. The court will, therefore, deny Defendant's request for a new trial based on ineffectiveness of trial counsel.

## VI. Error in Sentencing Defendant on Count Fifteen Simple Assault

Defendant asserts the court erred in sentencing him on count fifteen Simple Assault because the jury did not announce the verdict in open court. Rule 648 states the jury foreperson, upon the jury reaching a unanimous verdict, shall read the verdict in open court in the presence of the judge, the Commonwealth, and the defendant. Pa.R.Crim.P. 648(B). An orally announced jury verdict, however, does not go into effect until it is recorded. Commonwealth v. Brightwell, 424 A.2d 1263, 1265 (Pa. 1981). If there is a conflict between the recorded verdict and the orally announced verdict, the party moving to amend the recorded verdict must show by sufficient evidence the recorded verdict does not reflect the obvious intent of the jury. Commonwealth v. Huett, 341 A.2d 122, 124 (Pa. 1975).

In the case at bar there is no conflict between the recorded verdict and the verdict announced by the jury in open court for count fifteen since the jury foreperson did not announce a verdict for count fifteen in open court. In announcing the verdict, the foreperson announced the verdict for count fourteen, skipped over count fifteen, and then announced the verdict for count sixteen. Trial Transcript Day 3 1/26/18, 228. The Commonwealth appeared to realize this

error and requested the foreperson read the verdict for count fourteen. Id. at 227. The foreperson then re-read the verdict for count fourteen. Id. The recorded verdict, as indicated on the signed verdict slip, clearly shows a verdict of guilty as to count fifteen. Verdict Slip. There is no conflict between the recorded verdict and the one announced in open court and there is no evidence the recorded verdict does not reflect the obvious intent of the jury. The court, therefore, did not err in sentencing the Defendant in accordance with the recorded verdict and will deny Defendant's post-sentence motion on this ground.

## VII. Modification of Sentence

The final issue Defendant raises is his request to modify his sentence due to an assertion the court abused its discretion in imposing its sentence. Under the Sentencing Code the court must consider the sentencing guidelines in determining an appropriate sentence. 204 Pa. Code §303.1(a). The ultimate determination of the sentence remains in the discretion of the sentencing court. Commonwealth v. Jones, 640 A.2d 914, 916 (Pa.Super. 1994). The decision to run a sentence consecutively or concurrently to other sentences imposed at the same time or prior also rests in the sound discretion of the sentencing court. Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa.Super. 2011).

In sentencing Defendant in this case, the court considered the sentencing guidelines for each offense. In fact the sentence imposed for each count was within the standard range of the guidelines, except for count 10 Indecent Assault which was in the mitigated range. The court, in its discretion, chose to run the standard range guideline sentences for counts 1-4 Criminal Attempt Rape consecutively with each other and ran all other counts concurrently, except for the mitigated probationary sentence for count 10. At the time of sentencing the court placed its

reasoning for imposing such sentences on the record and relies on that reasoning as an explanation for the sentenced imposed and does not believe it abused its discretion in imposing such a sentence. The court will only add that each Criminal Attempt Rape conviction resulted from a separate assault and Defendant is not entitled to a bulk discount because he sexually assaulted his step-daughter on multiple occasions. For these reasons the court will deny Defendant's request to modify his sentence.

### VIII. Commonwealth's Motion to Add Costs

In addition to the post-trial motions filed by the Defendant, the Commonwealth filed a Motion To Request Additional Court Costs. At the July 5th hearing, however, the Commonwealth did not mention this motion or address it in any manner. It appears the Commonwealth has abandoned this request and the court will deny the motion.

An appropriate Order will follow.

, By the Court,

Hon. George W. Wheeler, President Judge

CERTIFIED TRUE AND CORRECT COPY
Tioga County Prothonotary
And Clerk of Courts

Cc:    District Attorney.
        Samuel Stretton, Esq.
        William Korey, Esq.